**Ray VINSON, Jr., Respondent,**

v.

**Joe ADAMS, Appellant.**

**No. ED 87355.**

Missouri Court of Appeals,
Eastern District,
Division Five.

April 11, 2006.

See also 188 S.W.3d 461.

Edward L. Dowd, Jr., Saint Louis, MO, for respondent.

Michael A. Gross, St. Louis, MO, for appellant.

## OPINION

GLENN A. NORTON, Chief Judge.

Joe Adams appeals the judgment renewing a full order of protection against him under the Adult Abuse Act. The original order was based on allegations that Adams had stalked Ray Vinson, and the petition for renewal claimed that those allegations continued to exist. We affirm.

## I. BACKGROUND

Vinson and his wife have been in litigation to dissolve their marriage.[1] Vinson's wife hired Adams to provide security and to keep Vinson under observation. Thereafter, Vinson filed a petition under the Adult Abuse Act alleging that Adams was stalking him. After a hearing, the court entered a full order of protection upon allegations that Adams inquired into purchasing a gun, followed Vinson down a hallway at Vinson's place of business and threatened him with physical harm then and on one other occasion. That order was effective until September 25, 2005.[2] Vinson moved to renew the order, claiming that the allegations in his original petition still existed and that, since the date of the original petition, Adams had followed Vin-

2. Today, we affirmed the original order of protection, which was appealed separately, after concluding that it was supported by substantial evidence. *See Vinson v. Adams*, 188 S.W.3d 461 (Mo.App. E.D.2006). Therefore, Adams's second point on this appeal—regarding the trial court's jurisdiction to renew an order that he claims was not valid because it was not supported by substantial evidence—is denied.

son to Nevada, disturbed his peace, stalked him and his friends and rummaged through his possessions.

At the hearing on the motion to renew, there was evidence that Adams is still employed by Vinson's wife to provide her and her employees protection against Vinson and that Adams continues to investigate Vinson's activities. Vinson testified that he believed expiration of the original order would place him in imminent and present danger of continued abuse by Adams because:

> Well, I mean, from what I know now, Adams is a convicted felon. He's threatened my life. He's admitted to killing other people. He's now sleeping with my wife, and we're in the middle of this divorce. Certainly, Adams has all the incentive in the world to get rid of me. When he buys a license plate that says BYE RAY and parks it in front of the office, in front of the employees, it certainly is telling, I think, that he means to get rid of Ray. I mean, even going out of a courtroom, Adams turned around to me and said, "I will get you. I'll get you." And he's even stated that his— most of his enemies are dead. And he's stated people like me ... are certainly his enemies. He follows me. They harass me constantly.

He testified that the circumstances that originally formed the basis of the order of protection continued to exist. Vinson testified that he felt he was still in danger and had hired people for protection because of Adams. Vinson said that Adams continued to threaten him, follow him, harass him and stalk him. Vinson admitted that he never witnessed Adams personally following or stalking him, but believed Adams had directed his agents to follow him: "I fear that they're around, because there's so many of them, I guess, that are following me that I can't tell you specifical-

ly that I've ever actually turned around and seen Joe there." Adams testified that he had not followed Vinson and had not had any of his agents do so.

Vinson testified that he received a picture of Adams's "BYE RAY" license plate. Above those words was a depiction of skull and crossbones, which Vinson considered indicative of death. Adams admitted that he owned the license plate, but testified, as did Vinson's wife, that "BYE RAY" was a reference to a joke that they could ditch the people Vinson had hired to keep them under surveillance.

The court found that Vinson failed to prove that Adams had committed any subsequent acts of abuse since the time of the original petition, but also found that Vinson had proven that he still feared Adams. Therefore, the court renewed the original order, which is now effective until April 30, 2006. Adams appeals.

## II. DISCUSSION

■ In this court-tried case, we will sustain the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Capps v. Capps,* 715 S.W.2d 547, 549 (Mo. App. E.D.1986) (citing *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)). "Substantial evidence is competent evidence from which the trier of fact could reasonably decide the case." *Wallace v. Van Pelt,* 969 S.W.2d 380, 382 (Mo.App. W.D. 1998). We defer to the trial court's determinations regarding credibility and view all facts and any inferences therefrom favorably to the judgment. *Id.* at 383.

■ "A full order of protection may be renewed for a period of time the court deems appropriate." Section 455.040.1 RSMo Cum.Supp.2004. The court is not required to find a subsequent act of abuse

to renew an order of protection. *Id.* Rather, the petitioner must prove by a preponderance of the evidence that expiration of the full order "will place the petitioner in an immediate and present danger of abuse." *Capps,* 715 S.W.2d at 552; *see, e.g., Bandelier v. Bandelier,* 757 S.W.2d 281, 283 (Mo.App. W.D.1988) (wife's bare statement that husband had been in her home several times was insufficient evidence that wife was in immediate and present danger of abuse by husband to support renewal order, even though his actions may have violated original order); *Jenkins v. Jenkins,* 784 S.W.2d 640, 644 (Mo.App. W.D.1990) (wife's testimony recounting acts of violence by husband accompanied by threats of future or continued violence was sufficient evidence that wife was in immediate and present danger of abuse to support renewal of order). Although a renewal order need not be based on subsequent acts of abuse, it can be. *Capps,* 715 S.W.2d at 552. It also "can be based on the fact that the circumstances forming the basis for the initial order continue to exist." *Id.; see also Bandelier,* 757 S.W.2d at 283.

There was sufficient evidence in this case that the circumstances forming the basis of the original order continued to exist. The Vinsons' contentious dissolution is still pending, and Adams is still employed by Vinson's wife to provide her and her employees protection from Vinson. Even if the evidence was insufficient to show that Adams had actually followed Vinson at any particular time since the original order,[3] Adams continued to investigate Vinson and continued to go beyond any legitimate investigation by threatening

Vinson. Deferring to the trial court and disregarding the contrary evidence of an innocent explanation for the license plate, "BYE RAY" accompanied by skull and crossbones reasonably could be taken by Vinson as a threat. Even if Adams's actions did not constitute subsequent acts of abuse, the evidence, taken together, was sufficient to show that Vinson was still being harassed and threatened by Adams and that he would be in immediate and present danger of abuse if the original order of protection was not renewed. Therefore, it was proper to renew the order of protection. Point I is denied.

### III. CONCLUSION

The judgment is affirmed.

NANNETTE A. BAKER and ROY L. RICHTER, JJ., concur.

---

3. We note without deciding that, contrary to Adams's argument, the acts of a respondent's agent done at the respondent's direction may be relevant in determining whether a petitioner has been abused or will be in immediate and present danger of abuse. Otherwise, a respondent could avoid the dictates of an order of protection or the renewal of such an order by simply employing someone else to stalk, harass or otherwise abuse the petitioner. That would defeat the purpose of the Adult Abuse Act to prevent potential violence.