**A.S. and B.S., Respondents,**

v.

**Tate DECKER, Appellant.**

**Nos. WD 71680, WD 71681.**

Missouri Court of Appeals,
Western District.

Aug. 10, 2010.

Susan E. Block and Alan E. Freed, St. Louis, MO, for appellant.

J. Zachary Bickel, Kansas City, MO and Josh Oxenhandler, Columbia, MO, for respondents.

Before Division Three: VICTOR C. HOWARD, Presiding Judge, THOMAS H. NEWTON, Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

Tate Decker appeals the entry of two full orders of protection under Missouri's Adult Abuse Act (455.005 et. seq.[1]) entered against him in favor of A.S. and B.S. For the reasons explained below, we affirm in part and reverse in part.

**Factual Background**

Tate Decker ("Decker") and A.S. had a child together in 2005, and since that time their romantic relationship has ended. A.S. is now married to B.S.

On July 30, 2009, A.S. and B.S. each filed a petition for an ex parte order of protection in Boone County Circuit Court under Section 455.035; orders were issued by the Court. The first petition was filed by A.S., and sought a full order of protection against Decker based on allegations that Decker had threatened and harassed her. The second petition was filed by B.S. against Decker based on allegations that Decker threatened him.

On August 27, 2009, the trial court, without objection, joined both actions for purposes of trial. During the trial, all the parties testified. The trial court issued both A.S. and B.S. a full order of protection against Decker under Section 455.020.

This appeal followed. The matters remain joined for purposes of this appeal.

**Standard of Review**

Our applicable standard of review was recently outlined in *Binggeli v. Hammond* in the following passage:

> Our review of a court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Schwalm v. Schwalm*, 217 S.W.3d 335, 336 (Mo.App. E.D.2007). We, therefore, will uphold the trial court's judgment as long as it is supported by substantial evidence, it is not against the weight of the evidence, and it does not erroneously declare or apply the law. *Id.* In reviewing the trial court's judgment, we consider the evidence in a light most favorable to the judgment and defer to the trial court's determination of credibility.

300 S.W.3d 621, 623 (Mo.App. W.D.2010).

**Analysis**

In Point One, Decker argues the trial court erred in entering a full order of protection in favor of B.S. because B.S. failed to prove his allegations of stalking as required by Section 455.020. Section 455.020 provides the elements that must be proven under the Act before a court may grant a full order of protection. That section states that "[a]ny adult who has

1. All statutory citations are to RSMo 2000, as updated through the 2010 Cumulative Supplement, unless otherwise indicated.

been subject to abuse by a present or former adult family or household member, or who has been the victim of stalking, may seek relief under sections 455.010 to 455.085 by filing a verified petition alleging such abuse or stalking by the respondent." Section 455.020. "As such, a full adult protection order may be entered only upon proof that the petitioner was: (1) subjected to abuse by a present or former adult family or household member or (2) subjected to stalking." *H.K.R. v. Stemmons,* 295 S.W.3d 220, 223 (Mo.App. W.D.2009). "Because there is real harm that can result in abusing the Adult Abuse Act and its provisions, including the stigma that may attach to a respondent who is ultimately labeled a 'stalker,' trial courts must exercise great care to ensure that sufficient evidence exists to support all elements of the statute before entering a full order of protection." *McGrath v. Bowen,* 192 S.W.3d 515, 517 (Mo.App. E.D.2006) (citing *Overstreet v. Kixmiller,* 120 S.W.3d 257, 258 (Mo.App. E.D.2003)).

In the case at bar, all parties agree that B.S. was not a present or former adult family or household member as defined in Section 455.010(5). The statute defines a "family" or "household member" as:

[S]pouses, former spouses, adults related by blood or marriage, adults who are presently residing together or have resided together in the past, an adult who is or has been in a continuing social relationship of a romantic or intimate nature with the victim, and adults who have a child in common regardless of whether they have been married or have resided together at any time[.]

B.S.'s only connection to Decker is that he is now A.S.'s husband. Accordingly, B.S. does not qualify as a adult family or household member; therefore, in order to qualify for a full order of protection under Section 455.020, he must be able to prove

that he was subjected to stalking by Decker. *See H.K.R.,* 295 S.W.3d at 223.

B.S. testified at trial to the following incidents as the bases of his stalking allegation:

(1) His wife A.S. received a call on her cell phone from Decker at 3:00 am on their wedding night, which she did not answer.

(2) On July 30, 2009, he was on the way to the police station to meet A.S. and her child who were there to resolve a conflict with Decker involving child visitation issues. In route to the police station, Decker pulled his vehicle next to B.S.'s almost hitting him and then pulled directly in front of his vehicle, causing B.S. to swerve and brake to avoid a collision. Decker then proceeded to make an offensive gesture and said something that B.S. could not hear but he felt to be threatening.

(3) When A.S. receives threatening calls or messages, she instantly relays them to him, and he feels equally threatened.

In *McGrath v. Bowen,* the court considered an order of protection entered on behalf of the petitioner for acts of stalking directed solely toward the petitioner's minor child. There the court found the full order of protection improper because the petitioner "must be both an adult *and a victim*" *McGrath,* 192 S.W.3d at 517 (emphasis added). In that case, the court made clear that even though a close relationship (parent-child) existed between the direct victim of stalking and the petitioner, that relationship was insufficient to support the petitioner's full order of protection. *Id.* There was no evidence that B.S. was threatened by Decker, only that A.S. relayed the threats she received to B.S. Accordingly, B.S.'s relationship to A.S. does not of its own accord support a finding that words and actions directed solely

toward A.S. create a basis for his own order of protection.

Section 455.010(10) defines "stalking" as "when an adult purposefully and repeatedly engages in an unwanted course of conduct that causes alarm to another person when it is reasonable in that person's situation to have been alarmed by the conduct." As used in this subdivision:

(a) "Alarm" means to cause fear of danger of physical harm.

(b) "Course of conduct" means a pattern of conduct composed of repeated acts over a period of time, however short, that serves no legitimate purpose....;

(c) "Repeated" means two or more incidents evidencing a continuity of purpose;

Section 455.010(10).

The only incident in the record, directed at B.S., to support the stalking allegation is the confrontation with Decker in his vehicle. As such, there were no repeated acts constituting a course of conduct, and thus, no allegation of stalking could have been sustained.

Because the circuit court misapplied the law in entering a full order of protection against Decker on behalf of B.S., the Judgment of this Full Order of Protection is reversed.

In Point Two, Decker argues the trial court erred in entering a full order of protection on behalf of A.S. based on A.S.'s allegations of harassment because the Order was not supported by competent and substantial evidence and was against the weight of the evidence, in that A.S. failed to demonstrate a knowing course of conduct aimed toward her that served no legitimate purpose, and A.S. failed to demonstrate substantial emotional distress.

It is agreed by all parties that A.S. has a child with Decker and, as such, qualifies as a "family" or "household member" under Section 455.010(5). Accordingly, in order to be entitled to full order of protection, per the statute, A.S. need only show that she has been subject to "abuse" by Decker. "Abuse" is defined as including, but not limited to, acts, attempts, or threats of the following: assault, battery, coercion, harassment, sexual assault, and unlawful imprisonment. Section 455.010(1)(a)-(f).

A.S. alleged in her Petition that Decker both harassed her and threatened her. Harassment is defined under Section 455.010(1)(d) as:

[E]ngaging in a purposeful or knowing course of conduct involving more than one incident that alarms or causes distress to another adult and serves no legitimate purpose. The course of conduct must be such as would cause a reasonable adult to suffer substantial emotional distress and must actually cause substantial emotional distress to the petitioner.

A.S. testified to the following incidents to support for her allegations:

(1) Decker has called A.S. repeatedly during the day while she is at work and not with the child after she had requested he desist. Over the phone Decker becomes very violent and talks about things other than their child.

(2) When Decker is with the child, he refuses to let A.S. talk with her or let A.S. know where she is located.

(3) In October 2008, Decker called A.S. several times asking why he was being retained in the country. (Decker was not allowed to leave the country because Family Services notified the authorities that he was late on child support payments pursuant to Section 454.890.) Decker then said he was coming over to A.S.'s house. A.S. called the police because she was afraid of him.

(4) On July 24th, 2009, Decker, after already exercising his visitation rights

for the week, threatened to come over to A.S.'s house and pick up the child and bring whomever he needs to bring to accomplish it.

(5) The child's daycare filed a trespassing order against Decker because they feel threatened by him, he speaks badly of A.S., and talks about child support and visitation issues in front of their child and other children.

(6) She testified there were numerous other threats that he would come over to her home and threats not to return the child.

(7) Decker was on probation for two years from August 2007 to August 2009 because he pled guilty to the offensive touching of A.S.

Reviewing the evidence in the light most favorable to the circuit court's order, we defer to the trial court's " 'superior ability to evaluate the potential for abuse by the testimony and demeanor of witnesses.' " *Cuda v. Keller*, 236 S.W.3d 87, 89 (Mo.App. W.D.2007) (quoting *Parkhurst v. Parkhurst*, 793 S.W.2d 634, 637 (Mo.App. E.D. 1990)). With these principles in mind, the trial court's record contains sufficient evidence to find that Decker engaged in a pattern of conduct that served no legitimate purpose, which constitutes harassment to A.S.

As part of probation for offensive touching of A.S., Decker was not to have any contact with A.S. except for purposes of exchanging the child. A.S. testified that she received multiple calls from Decker while he was on probation wanting to talk about things unrelated to the child and that he became violent during the conversations. Refusing to let A.S. speak with the child over the phone and withholding information as to the whereabouts of the child certainly constitutes conduct which would cause a reasonable person alarm and distress without serving a legitimate

purpose. Threatening to come over to A.S.'s house to take the child, and to bring whomever he needs to accomplish it, as well as threatening not to return the child are likewise conduct likely to cause alarm to a reasonable person and serves no legitimate purpose. The trial court did not err when it found that Decker had abused A.S. within the meaning of Section 455.010.

■ "Abuse by harassment requires a dual showing, that the conduct must be such as to cause a reasonable person to suffer substantial emotional distress, but also that it must actually cause such distress to the petitioner." *C.B. v. Buchheit*, 254 S.W.3d 210, 213 (Mo.App. E.D.2008) (citing *Wallace v. Van Pelt*, 969 S.W.2d 380, 384 (Mo.App. W.D.1998)). "The phrase 'substantial emotional distress' means 'the offending conduct must produce a considerable or significant amount of emotional distress in a reasonable person; something markedly greater than the level of uneasiness, nervousness, unhappiness or the like which are commonly experienced in day to day living.' " *Id.* (quoting *Wallace*, 969 S.W.2d at 386).

A.S. testified that, as a result of Decker's actions threatening to come pick up the child with whomever he needs to accomplish it, she was "very scared." As a result of the incident involving Decker in October 2008, A.S. called police when Decker threatened to come to her home because he wanted visitation with the child. Further, the record shows that Decker was already on probation concurrent with these events for a period of two years for offensive touching of A.S. A.S.'s testimony, the history between Decker and A.S., and the logical inferences from A.S.'s conduct are adequate to support the circuit court's finding that A.S. proved by a preponderance of the evidence that she suffered substantial emotional distress as a result of Decker's actions.

Decker cites two cases for the contention that simply answering in the affirmative to a leading question does not meet the level of harm required to support an order of protection. In both *Schwalm* and *Buchheit,* the court found that simply answering in the affirmative that the petitioner felt "alarm" at the challenged conduct was insufficient to show the challenged conduct caused fear of danger of physical harm. *Schwalm,* 217 S.W.3d at 337; *Buchheit,* 254 S.W.3d at 213. These cases are inapplicable here because the petitioner testified to specific conduct which caused her emotional distress.

■ "Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Murphy,* 536 S.W.2d at 32. " 'The trial court is free to believe or disbelieve all, part or none of the testimony of any witness.' " *Cuda,* 236 S.W.3d at 91 (quoting *T.B.G. v. C.A.G.,* 772 S.W.2d 653, 654 (Mo. banc 1989)). "It is also 'in a far better position to evaluate the credibility of witnesses than an appellate court and the resolution of conflicting evidence ... is left to the trial court with deference to be accorded to its conclusion.' " *Id.* (quoting *In re Marriage of Sisk,* 937 S.W.2d 727, 731 (Mo.App. S.D.1996) (internal quotation marks omitted)).

There was substantial evidence presented by A.S. to support the entry of a full order of protection on her behalf. Nothing in the record suggests that the trial court's decision was against the weight of the evidence. Accordingly, the trial court did not err in granting A.S. an order of protection.

Point Two is denied.

## Conclusion

The Judgment of a Full Order of Protection on the behalf of B.S. is reversed, and the Judgment of a Full Order of Protection on the behalf of A.S. is affirmed.

All concur.