Krystle Lynn MARTINELLI,
Petitioner–Respondent,

v.

Annette Marie MITCHELL,
Respondent–Appellant.

No. SD 31504.

Missouri Court of Appeals,
Southern District,
Division One.

June 21, 2012.

Douglas A. Hosmer, Hosmer King & Royce, LLC, Springfield, MO, for appellant.

No brief filed by Respondent.

GARY W. LYNCH, J.

Annette Marie Mitchell appeals the entry of a full order of protection against her and in favor of Krystle Lynn Martinelli ("Petitioner"). Mitchell contends that the trial court's issuance of the order was not supported by substantial evidence because there was no evidence that Mitchell abused or stalked Petitioner and was not supported by substantial evidence and was against the weight of the evidence because there was no evidence that Petitioner was in immediate and present danger at the time of its entry. Finding no merit in either of Mitchell's contentions, we affirm.

***Factual and Procedural Background***

On June 22, 2011, Petitioner filed a petition for an ex parte order of protection. Petitioner alleged that Mitchell stalked her, harassed her, unlawfully imprisoned her, and caused or attempted to cause her physical harm. She outlined a physical altercation, stating, "[Mitchell] hit me, causing the skin to split and bruise, she then ... start[ed] yelling and I left." Pe-

titioner also described events that had occurred when she returned to the house to collect her things, as well as repeated unwanted contact on June 20. Petitioner alleged "an immediate and present danger of abuse or stalking" in that Mitchell "refuses to leave me alone and I know she has a gun." An ex parte order of protection against Mitchell was issued that same day.

Viewed in the light most favorable to the judgment, *Clark v. Wuebbeling*, 217 S.W.3d 352, 354 (Mo.App.2007), the following evidence was adduced at trial on July 25, 2011, wherein Petitioner and Mitchell were the only witnesses:

Petitioner and Mitchell were friends, and Petitioner moved into Mitchell's home. At some point thereafter, the relationship between the two became intimate. On or around June 4, 2011, Mitchell "struck" Petitioner during a "physical altercation." Petitioner "ended up bruised with split skin." Petitioner became uncomfortable remaining in the home and moved out. A few days later, Petitioner returned to Mitchell's home to retrieve the remainder of her belongings, bringing a few friends with her. Once Petitioner entered the home, Mitchell locked the door behind her, locking Petitioner's friends outside. One of Petitioner's friends called the police. Petitioner and Mitchell engaged in "a verbal altercation." Petitioner did not feel safe and was able to eventually run to the back door of the house and escape. Once Petitioner was outside of the house, she called the police to let them know she was safe. Petitioner told Mitchell that if she would not leave her alone, she would seek a restraining order.

On June 20, Mitchell initiated conversations with Petitioner via text messages, phone calls, and Facebook. While Mitchell was civil at first, her conduct escalated to "name calling, insults, threatening to spit in my face if she ever saw me." The overall tone of the messages was "verbally abusive[.]"

Following trial, the trial court granted Petitioner a full order of protection against Mitchell. This appeal followed.

### Standard of Review

■ Our review of the entry of a full order of protection

> is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Schwalm v. Schwalm*, 217 S.W.3d 335, 336 (Mo.App. E.D.2007). We, therefore, will uphold the trial court's judgment as long as it is supported by substantial evidence, it is not against the weight of the evidence, and it does not erroneously declare or apply the law. *Id.* In reviewing the trial court's judgment, we consider the evidence in a light most favorable to the judgment and defer to the trial court's determination of credibility. *Id.*

*Binggeli v. Hammond*, 300 S.W.3d 621, 623 (Mo.App.2010).

### Discussion

■ Mitchell contends that the issuance of the full order of protection is not supported by substantial evidence, "in that there was no evidence that [Mitchell] abused or stalked [Petitioner]." Mitchell also claims that the order is not supported by substantial evidence and is against the weight of the evidence because "there was no evidence presented that an immediate and present danger of abuse existed at the time of the trial court's entry of a full order of protection."

"Any adult who has been subject to abuse by a present or former adult family or household member, or who has been the victim of stalking, may seek relief under section 455.010 to 455.085 by filing a verified petition alleging such abuse or stalk-

ing by the respondent." Section 455.020.1.[1] "Abuse," for purposes of orders of protection, includes assault, battery, coercion, harassment, sexual assault, and unlawful imprisonment.[2] Section 455.010.1. Battery is defined as "purposely or knowingly causing physical harm to another with or without a deadly weapon[.]" Section 455.010.1(b). Finally, "[a]t the hearing, if the petitioner has proved the allegation of abuse or stalking by a preponderance of the evidence, the court shall issue a full order of protection for a period of time the court deems appropriate[.]" Section 455.040.1. Thus, in order to be entitled to a full order of protection, Petitioner had to prove, by a preponderance of the evidence, that either (1) Mitchell was a present or former adult family or household member and had subjected Petitioner to abuse, or (2) Mitchell had stalked Petitioner.

Here, because Mitchell admitted she was a former household member with Petitioner, the only issue for the trial court to decide under the first basis for an order under section 455.020.1 was whether Petitioner had been subjected to abuse by Mitchell. Petitioner's testimony that on or around June 4, 2011, Mitchell "struck" her in a "physical altercation" and that, as a result, Petitioner "ended up bruised with split skin" was substantial evidence supporting that Mitchell had committed a battery upon Petitioner and, thus, by definition under section 455.010.1, Mitchell had subjected Petitioner to abuse. *See Houston v. Crider*, 317 S.W.3d 178, 186 (Mo. App.2010) (finding that substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of fact can reasonably decide the case and trial court is free to believe or disbelieve all, part, or none of the testimony of any witness). Because the issuance of the full order of protection by the trial court under the first basis under section 455.020—abuse—was supported by substantial evidence, we need not address the second basis—stalking.

The only mention of "immediate and present danger" in sections 455.010 to 455.085 occurs in section 455.035, in reference to the heightened standard required for the trial court's issuance of an ex parte order of protection, which is issued without the procedural safeguards afforded by a hearing. Section 455.035.1.[3] Although Mitchell cites three cases—*State ex rel. Williams v. Marsh*, 626 S.W.2d 223 (Mo. banc 1982), *Parkhurst v. Parkhurst*, 793 S.W.2d 634 (Mo.App.1990), and *Bandelier v. Bandelier*, 757 S.W.2d 281 (Mo.App. 1988)—in support of her contention that an immediate and present danger must be shown to obtain a full order of protection, none of the cases are on point. Both *State ex rel. Williams* and the relevant language in *Parkhurst* concern ex parte orders of protection, while *Bandelier* concerns what is essentially treated like the *renewal* of a full order of protection, not its first initial

---

1. All statutory references are to RSMo 2000, unless otherwise indicated. Chapter 455 was the subject of numerous amendments in 2011 by S.B. 320, which became effective August 28, 2011, after the events occurred and full order of protection was issued in this case.

2. Each of these actions is further defined in section 455.010.1.

3. Section 455.035.1 provides:
   Upon the filing of a verified petition pursuant to sections 455.010 to 455.085 *and for*

*good cause shown* in the petition, the court may immediately issue an ex parte order of protection. *An immediate and present danger of abuse to the petitioner shall constitute good cause for purposes of this section.* An ex parte order of protection entered by the court shall take effect when entered and shall remain in effect until there is valid service of process and a hearing is held on the motion.
   (Emphasis added).

entry as provided by sections 455.020.1 and 455.040.1.[4] Mitchell cites us to no cases, and our research finds none, that categorically extend the "immediate and present danger" requirement to obtain an ex parte order of protection under section 455.035 to the first initial issuance of a full order of protection as authorized by sections 455.020.1 and 455.040.1. Indeed, our research discloses that the western district of this court was presented with this contention based upon *Parkhurst*, and expressly rejected it. *Cuda v. Keller*, 236 S.W.3d 87, 90–91 (Mo.App.2007).

Because Petitioner was not required to prove an immediate and present danger to support the issuance of the full order of protection, Mitchell's claim premised upon such a requirement fails.

### *Decision*

The trial court's judgment is affirmed.

DON E. BURRELL, P.J., concurs.

NANCY STEFFEN RAHMEYER, J., concurs in separate opinion.

NANCY STEFFEN RAHMEYER, J.

I concur with the majority opinion that there is a bare minimum legal basis for the entry of a full order of protection. I write separately because the legislature's failure to require an "immediate and present danger" to have a full order of protection entered is illogical. A statute that was enacted to prevent potential domestic violence has increasingly been used as a substitute for the filing of criminal charges in assault and battery cases.[1] In this case, according to the complainant, two adult women who lived in the same home were involved in a "physical altercation." Petitioner did not explain the physical altercation other than to describe her injuries. Further, Petitioner did not file a criminal complaint; she moved out. She filed for an order of protection after she returned

---

4. Although *Bandelier* subsequently has been characterized as reversing a renewal order, *see Vinson v. Adams*, 192 S.W.3d 492, 495 (Mo.App.2006); *Jenkins v. Jenkins*, 784 S.W.2d 640, 642 (Mo.App.1990), a close reading reveals that the court actually reversed a second full order of protection issued upon the petitioner's second petition for a protection order that alleged the same acts of abuse as in her first petition and upon which a full order had been issued that was due to expire on the same day she filed her second petition. *Bandelier*, 757 S.W.2d at 282. The petitioner in *Bandelier* urged the western district of our court to consider her second petition "as being one for renewal," but the court refused to consider the second order as a renewal order. *Id.* at 282–283. Noting, however, that if it was treated as a renewal order, the evidence did not support a finding that petitioner was in an immediate and present danger of abuse as required for a renewal order under *Capps v. Capps*, 715 S.W.2d 547, 552 (Mo.App.1986), the court concluded *"a fortiori* that the evidence was insufficient to support" the second succeeding full order of protection. *Bandelier*, 757 S.W.2d at 283. Thus, the holding in

*Bandelier* is more precisely described as where a petitioner files a second-succeeding petition for a full order of protection alleging the same acts of abuse as contained in his or her first petition for a protection order and upon which a full order of protection was issued, the trial court may only issue a second-succeeding full order of protection if the evidence at the hearing on the second petition supports that the petitioner is then in an immediate and present danger of abuse—the same standard as required for a renewal order under *Capps. Id.* While *Bandelier* is a logical extension of *Capps*, it does not support Mitchell's contention that a petitioner must prove he or she is in an immediate and present danger of abuse in order to obtain his or her first initial full order of protection.

1. There were 2,649 Adult Abuse petitions filed in Greene County in 2011 alone. *Office of State Courts Administrator 2011 Annual Report Supplement*, Table 42, Circuit Court, FY 2011, Domestic Relations Cases Filed and Disposed by Case Type, http://www.courts. mo.gov/file.jsp?id=51741.

to retrieve her belongings (bringing friends with her) and engaged in a "verbal altercation" with Mitchell. Mitchell is then accused of initiating conversations with Petitioner via text, phone calls, and Facebook. Petitioner indicated the tone was "verbally abusive." There is no indication that Petitioner was in immediate and present danger from the "verbal abuse."

I question that the serious consequences to Mitchell under the Federal Gun Control Act, 18 U.S.C. 922(g)(8),[2] should be imposed based upon an unexplained "physical altercation" between the parties, "verbal abuse," and Petitioner's knowledge that Mitchell owns a gun. " '[T]he Adult Abuse Act was not meant to be a panacea for the minor arguments that frequently occur between neighbors.' " *C.H. v. Wolfe,* 302 S.W.3d 702, 707 (Mo.App. W.D.2009) (quoting *Wallace v. Van Pelt,* 969 S.W.2d 380, 386 (Mo.App. W.D.1998)). Likewise, the Act should not be a panacea for broken relationships and harsh words on Facebook or in texts. It seems to me that to be entitled to a full order of protection, the legislature should require that a claimant at least give lip service to some evidence that he or she is in an immediate and present danger of future abuse.

**2.** *See Towell v. Steger,* 154 S.W.3d 471, 475–76 (2005) (discussing the consequences of orders of protection being entered, including: loss of right to possess a firearm, even for recreational purposes; potential loss of livelihood if in the military or law enforcement; plus, the stigma attached to being found a "stalker" in background searches).