Pedro M. NENNINGER, Appellant,

v.

Jamie Lynne SMITH, Respondent.

Nos. WD 75152, WD 75153.

Missouri Court of Appeals, Western District.

March 19, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 30, 2013.

Application for Transfer Denied June 25, 2013.

Tony R. Nenninger, for appellant.

Douglas F. Pugh, Columbia, for respondent.

Before Division Three: CYNTHIA L. MARTIN, Presiding Judge, JOSEPH M. ELLIS, Judge and GARY D. WITT, Judge.

JOSEPH M. ELLIS, Judge.

Pedro Nenninger appeals from a judgment entered in the Circuit Court of Boone County issuing a full order of adult protection to Jamie Smith, granting Smith sole physical and legal custody of the child Nenninger had with Smith, and denying Nenninger's request for visitation with the child. Nenninger also challenges the circuit court's dismissal of his petition for an order of adult protection against Smith. For the following reasons, the judgment granting the order of protection to Smith is reversed, and the dismissal of Nenninger's petition is affirmed.

Nenninger and Smith were living together and involved in an intimate relationship when their child, C.N., was born on September 15, 2009. Eventually, after viewing what she believed to be manic behavior from Nenninger on August 14, 2010, Smith filed a petition for a full order of adult protection on August 19, 2010. That same day, prior to being served with that petition, Nenninger approached Smith and C.N. at a gathering of their friends at a park. When Smith refused to let him have contact with C.N., who she was holding in her arms, Nenninger sprayed Smith with mace, causing harm to both Smith and C.N.

Following that incident, a consent judgment granting Smith's requested full order of adult protection was issued on September 2, 2010. Nenninger subsequently entered a plea of guilty to one count of second degree domestic assault, § 565.073.1, and one count of first degree endangering the welfare of a child, § 568.045. He was sentenced to concurrent terms of five years imprisonment for those convictions.

In compliance with the order of adult protection, Nenninger had no contact with Smith or C.N. until after the order expired September 2, 2011. At that point, Nenninger began sending C.N. letters and attempting to make telephone contact with C.N. After repeatedly fielding phone calls from Nenninger and telling him that he could not talk to C.N., Smith had telephone calls from the Department of Corrections blocked from her telephone. Subsequently, on November 30, 2011, she filed a new petition for a full order of adult protection asking the circuit court to prohibit Nenninger from any attempt to communicate with herself or C.N. and to award her full custody of C.N. An ex parte order of protection was entered that day.

Nenninger filed an answer challenging Smith's petition and a counter-petition requesting visitation with C.N. He attached a proposed parenting plan to that pleading that would grant him visitation at least once a month and reasonable telephone

and mail communication with C.N. Nenninger also filed a Petition for Order of Protection against Smith claiming that she had previously stabbed him once, attempted to stab him on two other occasions, and was harassing him by denying him contact with C.N. by phone or mail and alienating her affection for him. In that petition, he requested that the parties be granted joint legal custody and that he be awarded visitation once per month.

At a hearing on February 7, the court denied Nenninger's request to participate in the proceedings via videoconference and his alternative request for a continuance to allow his videoconference testimony at a later date. The circuit court dismissed Nenninger's petition for an adult protection order, noting that it was impossible for him to fear abuse by Smith while he was in the Missouri Department of Corrections. The court then heard Smith's evidence on her petition for an order of protection against Nenninger and, later that same day, entered a judgment granting Smith the requested order of protection. In that judgment, the court awarded sole physical and legal custody of C.N. to Smith and ordered Nenninger to have no contact with Smith or C.N., aside from allowing Nenninger to send one piece of mail to C.N. per month to be handled at Smith's discretion.

■ Nenninger brings six points on appeal. In his first point, Nenninger claims that the trial court erroneously declared that § 452.375.3 and § 452.400.1 precluded any grant of custody or visitation to him based upon his conviction of first degree endangerment of a child and improperly excluded evidence related to the custody of or visitation with C.N. based on that conclusion of law. In his second point, Nenninger contends that the trial court erred in refusing to accept evidence related to the possibility of having supervised visita-

tion in the Department of Corrections. In his third point, Nenninger argues that the trial court erred in failing to make specific findings of fact and to include a parenting plan in its judgment as required by statute. In his fourth point, Nenninger claims that the trial court erred in refusing to grant his application for a writ of habeas corpus ad testificandum to allow him to participate and testify in the hearing via videoconference. In his fifth point, Nenninger asserts that the trial court erred in dismissing his petition for an order of adult protection because his petition sufficiently pleaded every element necessary for an order of adult protection. Finally, in his sixth point, Nenninger argues that the trial court erred in granting an order of protection to Smith because the record does not contain substantial evidence that he was stalking or abusing Smith through his letters and phone calls because his contact with her was for the legitimate purpose of maintaining contact with his child. He further claims that the pleadings and evidence establish that Smith could not have a reasonable fear of harm from him in light of his incarceration.

■ As in any court-tried case, our review of a judgment granting a full order of adult protection is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *A.S. v. Decker*, 318 S.W.3d 751, 753 (Mo. App. W.D.2010) (internal quotation omitted). Accordingly, "[t]he trial court's judgment must be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Skovira v. Talley*, 369 S.W.3d 780, 781 (Mo.App. S.D.2012) (internal quotation omitted). "In reviewing the trial court's judgment, we consider the evidence in a light most favorable to the judgment and defer to the trial court's determination of

credibility." *A.S.*, 318 S.W.3d at 753 (internal quotation omitted).

■ We begin with Nenninger's final point and consider whether substantial evidence was submitted that could support the full order of protection granted to Smith. "Because there is real harm that can result in abusing the Adult Abuse Act and its provisions, including the stigma that may attach to a respondent who is ultimately labeled a 'stalker,' trial courts must exercise great care to ensure that sufficient evidence exists to support all elements of the statute before entering a full order of protection." *Skovira*, 369 S.W.3d at 781. "The Act is not, nor was it intended to be, a solution for minor arguments between adults." *Id.*

"The Act states that '[a]ny adult who has been subject to abuse by a present or former adult family or household member, or who has been the victim of stalking, may seek relief under [the Act] by filing a verified petition alleging such abuse or stalking by the respondent.'" *Cuda v. Keller*, 236 S.W.3d 87, 90 (Mo.App. W.D.2007) (quoting § 455.020). "'Abuse,' for purposes of orders of protection, includes assault, battery, coercion, harassment, sexual assault, and unlawful imprisonment." *Martinelli v. Mitchell*, 386 S.W.3d 148, 150 (Mo.App. S.D.2012) (citing § 455.010.1). Section 455.040 provides that "if the petitioner has proved the allegation of abuse ... by a preponderance of the evidence, the court shall issue a full order of protection ... for at least one hundred eighty days and not more than one year."

Having had a child together, Nenninger and Smith are deemed to be family members for purposes of the adult abuse act.

§ 455.010(5). Because they are family members, in order to obtain her initial full order of protection, Smith was only required to plead and prove that Nenninger subjected her to one or more instances of abuse. *Cuda*, 236 S.W.3d at 90–91. In order to have that order of protection renewed, however, Smith would have been required to prove by a preponderance of the evidence that the expiration of the full order would place her "in immediate and present danger of abuse." *Vinson v. Adams*, 192 S.W.3d 492, 495 (Mo.App. E.D.2006); *see also Capps v. Capps*, 715 S.W.2d 547, 552 (Mo.App. E.D.1986).

While Smith's petition most certainly avers and the evidence establishes that Nenninger committed an act of battery against her by spraying her with mace, that was the evidentiary basis for her previous protective order, for which she did not seek renewal. It would be wholly illogical for Smith to be allowed to avoid the burden of proving an immediate and present danger of abuse, as required for the renewal of a full order of protection, by simply letting the initial full order of protection lapse and then filing a new motion for a full order of protection averring the same allegations of abuse that formed the basis for the initial order. Indeed, allowing such practice would improperly enable any petitioner who has previously been abused by a family or household member to obtain full orders of protection *ad infinitem*, whereas § 455.040.1 only authorizes a maximum of two renewals of a full order of protection. In short, to obtain a new order of protection, Smith was required to plead and prove new allegations of abuse or stalking.[1]

---

1. On the other hand, subsequent acts of abuse are not required to renew an order of protection; "[r]ather, the petitioner must prove by a preponderance of the evidence that the expiration of the full order will place the petitioner in an immediate and present danger of abuse." *Vinson v. Adams*, 192 S.W.3d 492, 494 (Mo.App. E.D.2006) (internal quotation omitted).

The only new allegations asserted in Smith's motion that did not form the basis for the prior protective order were her claims related to Nenninger's letters and phone calls from prison after the prior protective order expired. Smith argues that these allegations and the evidence supporting them are sufficient to justify an order of protection based upon abuse by harassment.

■ In order to prove a claim of harassment under the Act, Smith was required to prove that Nenninger engaged "in a purposeful or knowing course of conduct involving more than one incident that alarms or causes distress to an adult or child and serves no legitimate purpose. The course of conduct must be such as would cause a reasonable adult or child to suffer substantial emotional distress and must actually cause substantial emotional distress to the petitioner or child." § 455.010(1)(d), RSMo Cum.Supp.2011. Thus, "[a]buse by harassment requires a dual showing, that the conduct must be such as to cause a reasonable person to suffer substantial emotional distress, but also that it must actually cause such distress to the petitioner." A.S., 318 S.W.3d at 756 (internal quotation omitted). "The phrase 'substantial emotional distress' means the offending conduct must produce a considerable or significant amount of emotional distress in a reasonable person; something markedly greater than the level of uneasiness, nervousness, unhappiness or the like which are commonly experienced in day to day living." Id. (internal quotation omitted).

With regard to the phone calls, Smith indicated that she was irritated with how often Nenninger was calling the house to try to talk with C.N. and that the harassment was these frequent attempts to talk to C.N. She did not indicate that any of his conversations with her were threatening in any manner, though she testified that in general she feels fearful of and threatened by him. Smith testified that she thinks she is "suffering from a mild case of post-traumatic stress disorder and that thinking of [Nenninger] makes [her] feel a little anxious." A small degree of anxiety does not rise to the level of substantial emotional distress. Moreover, the record reflects that shortly after the calls began, Smith was able to have all calls from the prison blocked on her phone. The record simply does not contain evidence that would support a finding that Nenninger's phone calls would have caused substantial emotional distress in a reasonable person.

Though she had a subpoena asking her to bring with her any letters she had from Nenninger, Smith testified that she did not have any. She offered no testimony related to the content of any of Nenninger's letters to C.N. In fact, the record does not reflect how many letters Nenninger sent or how many, if any, Smith ever opened or read. Smith stated that her desire to prevent Nenninger from sending letters to C.N. was based on her not wanting C.N. to know who her father was. She also testified that she was afraid that Nenninger might make promises to C.N. about things he would do with her after he was released from prison and then fail to carry through on those promises based on experiences she had with the father of one of her other children. Smith's testimony regarding the letters simply does not support a finding that she suffered substantial emotional distress as a result of Nenninger sending them to C.N. and is certainly insufficient to support a finding that the letters would have caused substantial emotional distress in a reasonable person.

Furthermore, nothing in Smith's testimony reflects a belief on her part that any of Nenninger's phone calls or letters were pretextual in nature or were anything other than legitimate attempts to communi-

cate with his child. Indeed, a failure on the part of Nenninger to attempt to maintain contact with his child, when not otherwise precluded from doing so, could later be held against him in an action to terminate his parental rights or in an action seeking custody or visitation after his release from prison. *See, H.D. v. E.D.*, 629 S.W.2d 655, 657 (Mo.App. E.D.1982) (holding parent's contacts were "token efforts" and would not preclude a finding of abandonment where contact was limited to one postcard, support of $25, and 4 to 10 telephone calls during a 12 to 18 month period); *In the Interest of Y.M.H.*, 817 S.W.2d 279, 283 (Mo.App. W.D.1991) (holding minimal contacts did not preclude finding of abandonment where the parent's sole contact with the child had been limited to a 10–hour visit and financial support of $33); *R.L.P. v. R.M.W.*, 775 S.W.2d 167, 170 (Mo.App. E.D.1989) (two visits over six-month period, where evidence indicated that the parent could have visited more, were token efforts); *In the Interest of B.C.H.*, 718 S.W.2d 158, 161–62 (Mo.App. W.D.1986) (affirming termination of parental rights despite the fact the child was taken from the parent's custody involuntarily by court order, where the parent neither sought visitation nor attempted to communicate with the child for a period of over one year and resisted all efforts to arrange contact with the child). Thus, Smith failed to prove the necessary element for a finding of harassment that Nenninger's actions served no legitimate purpose.

As the trial court's entry of a full order of protection in favor of Smith is not supported by the evidence, the judgment must be reversed.[2] Having reached this conclusion, we need not address Appellant's remaining points of error related to that judgment.

■■■ All that remains to be addressed is Appellant's claim that the trial court erred in dismissing his petition for an order of adult protection against Smith. "The dismissal without prejudice for failure of the petition to state a claim, when the party elects not to plead further, amounts to a determination that the plaintiff has no action. In such a case, the judgment of dismissal—albeit without prejudice—amounts to an adjudication on the merits and may be appealed." *Atkins v. Jester*, 309 S.W.3d 418, 426 (Mo.App. S.D.2010). Where the trial court has dismissed a petition for failure to state a claim, our review is *de novo. Lynch v. Lynch*, 260 S.W.3d 834, 836 (Mo. banc 2008). "If the petition sets forth any set of facts that, if proven, would entitle the plaintiff to relief, then the petition states a claim" and the trial court's dismissal of the matter must be reversed. *Id.* In making that determination, the facts contained in the petition are treated as true and are construed liberally in favor of the plaintiff. *Id.*

Nenninger's petition averred that Smith had caused or attempted to cause him physical harm. He claimed that Smith stabbed him without justification in March 2009 and that she had attempted to stab him without justification in December 2008 and during the summer of 2010. Thus, his petition certainly set forth allegations of assault and battery that would constitute abuse under the Act.[3] Nenninger also as-

---

2. We gratuitously note that Smith's wishes to have limits placed on Nenninger's contact with C.N. or to have a court consider denying him any contact at all are much better suited to a request for an award of custody in an ordinary paternity action.

3. "Assault" is defined as "purposely or knowingly placing or attempting to place another in fear of physical harm." *§ 455.010(1)(a).* "Battery" is defined as "purposely or knowingly causing physical harm to another with

serted that Smith was presently harassing him by refusing to let him speak with C.N. and alienating her affection toward him.

In dismissing Nenninger's petition for an order of protection, the trial court noted Nenninger's acknowledgement of his state of incarceration in his pleadings and during the pre-trial hearing on Smith's motion to dismiss. The court found that there was no way Nenninger could possibly demonstrate an immediate and present danger of abuse from Smith while he was confined within the Department of Corrections.

 "The plain language of section 455.040.1 indicates that the trial judge *shall* grant a full order of protection upon proof of an act of abuse; it does not require proof of an immediate or present danger of abuse, nor does it vest the trial court with any discretion." *McAlister v. Strohmeyer*, 395 S.W.3d 546, 553–54 (Mo. App.W.D.2013). "That being said, however, because the remedies provided consist of injunctive relief, and because the purpose of the Act is, in part, to prevent *future* violence, we believe that proof of an act of abuse under section 455.040.1 carries with it a presumption of immediate and present danger that justifies both the remedy provided and the limit on the trial court's discretion." *McAlister v. Strohmeyer*, 395 S.W.3d at 554 (Mo.App.W.D. 2013). Thus, for a full order of protection under the Act to be proper, there is, in fact, a requirement that the petitioner prove an immediate and present danger of future abuse or stalking, albeit that burden

is almost always satisfied as a result of the rebuttable presumption of immediate and present danger arising from proof of one or more acts of abuse.[4] *McAlister v. Strohmeyer*, 395 S.W.3d at 553 (Mo.App. W.D.2013). Moreover, the weight afforded to the presumption of an immediate and present danger arising from proof of abuse diminishes over time and the rebuttable presumption may carry little weight "when there is a significant delay between the alleged act of abuse and the filing of the petition," *McAlister v. Strohmeyer*, 395 S.W.3d at 554 n. 7 (Mo.App.W.D.2013), as there was in the case at bar.

In dismissing Nenninger's petition, the trial court effectively found that the admitted fact of his incarceration rebutted any presumption of an immediate and present danger of abuse that could arise as a result of Nenninger proving his allegations of abuse and that Nenninger would not be able to present any evidence that could support a finding of immediate and present danger of abuse. Indeed, Nenninger's attorney conceded during the hearing on the motion to dismiss that the only present and future abuse Nenninger was alleging was Smith's harassment of him by the denial of contact with C.N. and use of C.N. as a pawn to punish him. These are, quite simply, not the type of "abuse" sought to be addressed by the Act.

On appeal, Nenninger relies on *A.S. v. Decker*, 318 S.W.3d 751, 756 (Mo.App. W.D.2010), in claiming that Smith's actions in denying him contact with C.N. constitute abuse by harassment. His reliance on

---

or without a deadly weapon." § 455.010(1)(b).

**4.** The Southern District of this Court reached a contrary conclusion in *Martinelli v. Mitchell*, 386 S.W.3d 148 (Mo.App. S.D.2012), holding that, while an immediate and present danger of abuse was required for an *ex parte* order and for renewal of a full order of protection, there was no requirement that a movant prove an immediate and present danger of abuse for the issuance of an initial full order of protection. This Court chose not to follow this holding from *Martinelli* in *McAlister v. Strohmeyer*, 395 S.W.3d at 553 (Mo.App. W.D.2013).

*A.S.* is misplaced. In *A.S.*, the person against whom the order of protection was sought made telephone calls to the movant unrelated to their child that frequently turned violent, refused to let the movant speak with the child or tell her where the child was when the child was with him, and threatened to bring others with him to physically take the child and to not return the child. *Id.* The alleged acts committed by Smith in the case at bar simply do not rise to the level of the repeated threats of and fear of kidnapping involved in *A.S.* Simple blocking of communication with a child and alienation of affections are claims properly addressed by way of a standard domestic relations case. Such claims do not provide a basis for the issuance of a full order of adult protection under the Adult Abuse Act.

In light of Nenninger's admitted incarceration and lack of fear of any actions by Smith aside from her continued interference with his communication with C.N., the trial court's dismissal of his petition was not erroneous.[5] Point denied.

For the foregoing reasons, the judgment granting the order of protection to Smith is reversed, and the dismissal of Nenninger's petition is affirmed.[6]

All concur.

---

5. As noted *supra,* the dismissal of Nenninger's petition was without prejudice. Neither the trial court's dismissal nor this opinion would serve to bar Nenninger's filing of another petition once he was no longer incarcerated.

---

6. Both parties' concerns related to custody, visitation, and communication with C.N. could all effectively, and properly, be addressed in the context of an ordinary paternity proceeding, where no proof of abuse or stalking would be required for the court to address those issues.