William GLASGOW, Appellant/Cross-Respondent,

v.

Margaret A. COLE, Respondent/Cross-Appellant.

No. ED 80360.

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 10, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 24, 2002.

Application for Transfer Denied Nov. 26, 2002.

Thomas A. Connelly, St. Louis, MO, for Appellant.

Sanford Goffstein, Robert E. Tucker, Goffstein, Raskas, Pomerantz, Kraus & Sherman, L.L.C., St. Louis, MO, for Respondent.

PAUL J. SIMON, Judge.

Margaret A. Cole appeals the trial court's judgment granting William Glasgow's motion for summary judgment and denying her motion for summary judgment on Glasgow's claim against her for breach of an insurance contract. In addition, Glasgow appeals the trial court's amended judgment reducing the amount of prejudgment interest to the date the motion for summary judgment was filed.

On appeal, Cole contends that the trial court erred in sustaining Glasgow's motion for summary judgment and denying her motion because the evidence established that any recovery on Glasgow's claim would have been barred in that: 1) the property was unoccupied prior to the fire for a period beyond sixty days and thus subject to a policy exclusion of unoccupied properties; and 2) Glasgow's application contained false statements regarding the

occupancy of his property and, therefore, was subject to exclusion. In his cross-appeal, Glasgow contends the trial court did not err in granting summary judgment but did err in amending the judgment by reducing the amount of prejudgment interest to the date the motion for summary judgment was filed, as opposed to the day after the fire. We reverse and remand.

■ We note that although Cole appeals the denial of her summary judgment motion, such appeal is not subject to appellate review. *Estate of Knapp v. Newhouse*, 894 S.W.2d 204, 208 (Mo.App. E.D.1995). As such, our review of Cole's point on appeal will focus only on the trial court's sustaining of Glasgow's motion for summary judgment.

Appellate review of a summary judgment is essentially de novo. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo.banc 1993). When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered. *Id.* To prevail on a motion for summary judgment, the movant must establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Id.* at 377.

■ The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. *ITT* at 376. The propriety of summary judgment is purely an issue of law. *Id.* As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment. *Id.*

The record, in the light most favorable to the non-movant, reveals that on April 2, 1998, Glasgow, a real estate developer, acquired property located at 2415 Wheaton from Glasgow Enterprises, Inc. for the purposes of rehabbing it and either renting or selling it. On June 24, 1998, Patrick McQuay, a subcontractor for Glasgow, ordered property insurance by phone in the amount of $60,000 for the Wheaton property from Margaret A. Cole, a registered broker for Med James, Inc., a managing agent for Universal Fire & Casualty Insurance Co. (UF & C).

On June 25, 1998, Glasgow signed a UF & C Dwelling Fire Application which provided in pertinent part:

### DWELLING FIRE RISK CHARACTERISTICS

\* \* \* \* \* \*

8. Dwelling under construction, rehabilitation, or vacant? ... No

\* \* \* \* \* \*

### RATING INFORMATION

Occupancy: ____ Owner _x_ Tenant ____ Seasonal

If NEW purchase, when to occupy? ... Tenant Occupied

\* \* \* \* \* \*

All coverages in our Dwelling Fire Program are subject to exclusions or limitations. We want to bring certain items to your attention. Exact wording of exclusions and limitations can be found in the policy. These are NOT the only exclusions or limitations in our policy....

This application will only bind coverage if it conforms with all binding authority guidelines....

I DECLARE the information given on this application is true and exact to the best of my knowledge. I agree that this application shall constitute a part of the policy issued whether attached or not; and any willful concealment or misrepresentation of a material fact or circumstance shall void any policy issued based on the statements provided herein. I have read and understand the above listed policy exclusions and limitations.

Upon receipt of the application, Cole signed on June 25, 1998, as Broker and UF & C Agent. Pursuant to the application and paid premium of $660.00, Glasgow received "Evidence of Property Insurance," signed on June 25, 1998, by Cole, providing in part:

THIS IS EVIDENCE THAT INSURANCE AS IDENTIFIED BELOW HAS BEEN ISSUED, IS IN FORCE, AND CONVEYS ALL THE RIGHTS AND PRIVILEGES AFFORDED UNDER THE POLICY.

The effective dates stated on Evidence of Property Insurance were June 25, 1998 to June 25, 1999. Evidence of Property Insurance also included a cancellation provision which provided, "the policy is subject to the premiums, forms, and rules in effect for each policy period...."

On the night of June 28, 1998, the Wheaton property was damaged by fire. Subsequently, Glasgow filed a report of loss with Cole, who faxed a Report of Loss to Med James, Inc. on July 1, 1998, which was received on July 2, 1998. However, Med James, Inc. did not receive Glasgow's application until July 6, 1998. Immediately upon receipt, Med James, Inc. sent a letter to Cole rejecting the application for the following reasons: 1) required front and rear photos were not submitted with Glasgow's application; and 2) the application was not postmarked within three days of the requested effective date.

On June 2, 2001, Glasgow filed a breach of contract action against Cole. In his petition, Glasgow asserted that Evidence of Property Insurance was effective as of June 25, 1998, insuring against fire loss in the sum of $60,000 and that Cole refused payment. Cole filed her answer denying virtually all of Glasgow's allegations and setting forth affirmative defenses including: 1) breach of Glasgow's obligations and conditions purported in the contract; 2) void policy due to material misrepresentations on the application; and 3) ineligibility of coverage due to the Wheaton property's vacancy at the time of application.

On July 3, 2001, Glasgow filed a motion for summary judgment, generally setting forth facts in which there was no material issue. However, he alleged certain facts stating in pertinent part:

\* \* \* \* \* \*

17. Since the loss, the Wheaton property has been repaired at a cost of $58,508.51 (Exh. 8 attached hereto).

18. On 23 June 1998, a residential lease was executed between Plaintiff and tenants Rosemary Brown and Yolanda Rickmon (Tenants) at the monthly rent of $500.00 per month (Glasgow Aff'd., par. 6; Exh. 11 attached hereto).

19. Brown and Rickmon (the Tenants) began moving into the property on either 24 or 25 June 1998 and had moved in furniture and appliances including, a stove and refrigerator, prior to 28 June 1998 (Glasgow Aff'd. par. 7; Exh. 10: Patrick McQuay depo. (McQuay depo.), pg. 18, ln. 1 thru pg 19 ln. 1 and pg. 32, ln. 3–7).

20. After the fire, the Tenant's property including furniture, the stove,

refrigerator, clothing and toys were observed in the burned premise (McQuay depo. pg. 31, ln. 19–24). For example, there was a refrigerator in the kitchen, a couch in the front room, a bed in the first bedroom, a bed in the second bedroom and boxes of "stuff" in the third bedroom. There was a dresser in the second bedroom and there were a "lot of clothes" and "lot of kids' toys" (Exh. 11: Flarzell Harris depo. (Harris depo.), pg. 17, 18, lns. 3, 5).

21. The tenants took possession and had commenced moving their possessions into the property on 24 or 25 June 1998 (Glasgow Aff'd. par. 7; Exh. 10: McQuay depo. pg. 32, lns. 307; Exh. 11: Harris depo. pg. 17, 18).

\* \* \* \* \* \*

In support of his motion for summary judgment, Glasgow attached Exhibit 8, filed copies of receipts and checks of Glasgow Enterprises, Inc., showing the costs of repairing the Wheaton property. However, Exhibit 8, which contained a total of more than $58,508.51, does not set forth the checks and bills in an order that it can be ascertained without significant effort if the checks are for payment of the attached bills or for payment of bills or debts that are not attached. Further, on some bills the amounts are not clearly legible.

Glasgow also filed his affidavit stating that a residential lease was executed on June 23, 1998, and that on either June 24 or 25 the tenants began moving their furniture and appliances including their own stove and refrigerator into the Wheaton property. He further filed the deposition testimony of Patrick McQuay, who testified that he witnessed the tenants moving belongings into the Wheaton property approximately one week before the fire. In addition, Glasgow included the deposition testimony of Flarzell Harris, who worked on the Wheaton property in November 1999. Harris testified to the presence of a refrigerator, couch, beds, boxes, dressers, clothes and toys inside the Wheaton dwelling as of November 1999.

On August 10, 2001, Cole filed her motion for summary judgment with exhibits, and on August 29, 2001, she filed her response to Glasgow's motion for summary judgment supported by exhibits, additional undisputed facts, and legal argument. In her response, Cole essentially admitted all of Glasgow's facts except those alleged in paragraphs 17, 18, 19, 20, and 21. In regard to the cost of the repairs, Cole denied Glasgow's amount asserting that the documents submitted in support of Glasgow's alleged repairs totaled $128,419.40, which included checks made out to the Collector of Revenue for real estate taxes on the Wheaton property and payments on a note dated June 19, 1998 to the Allegiant Bank.

As to her denial of paragraph 18, Cole stated that she did not have sufficient information to admit or deny the existence of the alleged lease and in a footnote stated that Glasgow first disclosed the existence of the lease at his deposition on March 15, 2000, and after two letters and a motion to compel, produced the document in a supplemental response dated May 29, 2001, without producing the requested original.

However, pursuant to Supreme Court Rule 74.04(c), Cole by her response, did not raise an issue as to the fact of the lease as alleged in paragraph 18. Since, the issue was not raised as to the allegation in paragraph 18, it will be deemed admitted.

In support of her denials of paragraphs 19, 20, and 21, Cole attached an affidavit of Yolanda Rickmon, one of the named ten-

ants in Glasgow's motion for summary judgment. Rickmon stated in her affidavit that in June 1998, she, her mother, Rosemary Brown, and stepfather, Samuel Brown, agreed to purchase the Wheaton property, and were scheduled to close on June 29 or 30. She further stated that on the Friday before the closing she asked Glasgow if she could move some belongings into the Wheaton property, and he gave her a key to the house. During the early evening of June 28, 1998, Rickmon took some bags to the house containing clothing, toys, bedding and an entertainment center. However, she denied moving any furniture into the house, specifically a stove, refrigerator, dresser, or couch. The next morning, on Monday, June 29, Rickmon went back to the Wheaton property with her mother and stepfather to help them move their belongings into the house but then discovered the fire. She denied ever moving into the Wheaton property and instead, bought another house. She further denied that she, her mother, or stepfather ever lived in or resided in or occupied the Wheaton property. Rickmon stated that neither she, her mother, or stepfather ever spent the night, received mail, or had the utilities connected at the Wheaton property. Finally, Rickmon stated that she first looked at the property in May 1998, and there was no one living at the house during that time and that no one lived in the house from May to the date of the fire.

On September 20, 2001, the trial court granted Glasgow's motion for summary judgment and entered judgment in the amount of $58,508.51 plus prejudgment interest in the sum of $15,797.29 plus per diem interest at the rate of $43.28 as and from June 29, 2001 to the date of judgment and denied Cole's motion for summary judgment.

Cole filed a motion to amend the judgment on September 25, 2001, contending that the prejudgment interest was incorrect because it was calculated "virtually from the date of the loss on June 29, 1998," as opposed to when the amount in controversy was ascertainable and liquidated. She stated that the interest should not have accrued until: 1) Glasgow's motion for summary judgment was filed, which allegedly was the first time he disclosed the precise amount of his claim; 2) when the documents were first produced in support of his claim on February 19, 2001; 3) when Glasgow began incurring repair costs for his property in November 1999; or 4) December 17, 1998, which allegedly was the date previously cited by Glasgow to the trial court and which closely follows the date of his first full estimate of damages in October 1998, from his insurance adjuster. Further, Cole maintained that Glasgow completely miscalculated the amount of per diem interest at the rate of $43.28. She alleges that the per diem amount should have been $14.42 ($58,508.51 × 9 percent ÷ 365).

In response to Cole's motion to amend judgment, Glasgow argued that the amount in dispute was ascertainable as of the date he originally filed suit where he pleaded $60,000 (the amount of coverage afforded by Evidence of Property Insurance). Further, that under Missouri law of insurance, interest is payable from the date of the claim's denial. As such, he argued that Med James, Inc.'s denial of insurance coverage had the legal effect of denying his claim. Therefore, the denial date was July 6, 1998, the date of Med James, Inc.'s letter to Cole. He further asserts that the new calculation revealed that as of July 6, 1998, the sum of $16,907.01 was the appropriate prejudgment interest amount for the judgment and urged that is should be amended accordingly.

The trial court entered an amended judgment sustaining Glasgow's motion for summary judgment and denying Cole's motion for summary judgment and maintaining the amount of judgment against Cole in the sum of $58,508.51 but reduced the prejudgment interest to the sum of $1,067.58. Subsequently, Glasgow filed a motion to amend the judgment which was denied.

In her only point on appeal, Cole contends that the trial court erred in granting Glasgow's motion for summary judgment in that: 1) the evidence established that the Wheaton property was "unoccupied" for a period beyond sixty days and thus subject to policy exclusion of unoccupied properties; and 2) the evidence established that Glasgow's application for insurance contained false statements regarding the occupancy of the Wheaton property, and therefore, the policy was void by the terms of the application.

■ Upon review of the record, we find that a genuine issue of material fact exists as to the costs of repair of the Wheaton property. In response to Glasgow's motion for summary judgment, Cole questions the $58,000 cost to repair. The bills and checks in Exhibit 8 clearly total far more than the alleged costs of repair of the Wheaton property, and the relationship between the checks and bills is not easy to decipher and it is not our responsibility to correlate the checks with the bills.

Additionally, we find that there is a genuine issue of material fact concerning the date of occupancy of the Wheaton property as indicated on the insurance application. Cole's denial of Paragraph 18 of Glasgow's motion for summary judgment setting forth that a residential lease was executed between Glasgow and the tenants, Rosemary Brown and Yolanda Rickmon, on June 23, 1998, was deemed admitted. However, after reviewing the affidavits in support of Glasgow's motion for summary judgment and of Cole's response thereto, we find that the following facts are specifically disputed: 1) Glasgow's answer on the application as to the date, June 25, 1998, the premises were occupied by the tenants and in his affidavit they had moved in furniture and appliances, including a stove and a refrigerator prior to June 28, is contradicted by Rickmon's affidavit stating that she took some bags containing clothing, toys, bedding and an entertainment center on June 28 and specifically denied moving any furniture including a stove and refrigerator into the property; and 2) Glasgow's allegation that the tenants took possession of the property on June 24 or 25 and that the premises were occupied on June 25 was specifically denied in Rickmon's affidavit.

In *Dixon v. Business Men's Assurance Co. of America,* 365 Mo. 580, 285 S.W.2d 619, 625 (banc 1955), our Supreme Court found that where material representations made in an application for insurance are warranted to be true, or the policy is conditioned upon the truth of the representations, or provides that the falsity of the representations, shall void the policy, then the representations, if in fact untrue, will avoid the policy, though the representations were innocently made. Here, the application constitutes a part of the policy, and any misrepresentation of material fact would void the policy. Therefore, these genuine issues of material facts indicate that there may be material misrepresentations in the application for insurance. Since there is a question of fact as to whether or not the premises were occupied on or before June 25 is subject to question. As a result, there is a genuine issue of material fact as to the statement on the application and the damages. Therefore, we must reverse and remand the judgment for further proceedings.

In his cross-appeal, Glasgow contends that the trial court erred in amending its judgment by reducing the amount of pre-judgment interest award. Since we are reversing and remanding the judgment, it is not required that we address this point at this time.

Judgment reversed and remanded.

GARY M. GAERTNER, SR., P.J. and CLIFFORD H. AHRENS, J., concur.