**Alyssa F. McALISTER, Appellant,**

v.

**Ethan T. STROHMEYER, Respondent.**

**No. WD 75160.**

Missouri Court of Appeals, Western District.

Jan. 8, 2013.

Application for Transfer to Supreme Court Denied March 5, 2013.

Application for Transfer to Supreme Court Denied April 30, 2013.

---

Leonard K. Breon, Warrensburg, MO, for Appellant.

John H. Edmiston, Warrensburg, MO, for Respondent.

Before Division Two: LISA WHITE HARDWICK, Presiding Judge, and JAMES M. SMART, JR., and KAREN KING MITCHELL, Judges.

KAREN KING MITCHELL, Judge.

Alyssa McAlister appeals the denial, following a bench trial, of her request for a full order of protection against her child's father, Ethan Strohmeyer. McAlister argues that the undisputed evidence demonstrated that Strohmeyer pointed a gun at her and that such conduct constituted an attempt to place her in fear of physical harm under section 455.010. Consequently, McAlister argues, the trial court was required by section 455.040.1 to issue a full order of protection on McAlister's behalf against Strohmeyer. Finding no error in the trial court's decision, we affirm.

## Factual Background [1]

■ McAlister and Strohmeyer have never been married to one another, but

---

1. "We view the evidence in a light most favorable to the court's order." *Cuda v. Keller,* 236 S.W.3d 87, 89 n. 1 (Mo.App. W.D.2007).

they have one child together.[2] On January 13, 2012, McAlister and Strohmeyer agreed to meet at a restaurant for the purpose of giving Strohmeyer some time to visit with their child. When they met, McAlister informed Strohmeyer that she had plans that evening and that their child would be staying with Strohmeyer. Before that time, Strohmeyer had no plans of keeping their child that night. Although he initially resisted the idea, he eventually agreed, but he informed McAlister that he would need some time to prepare for the child's stay.

After leaving the restaurant, McAlister and Strohmeyer met at Strohmeyer's home. Strohmeyer took the child from McAlister on the curb outside his residence and advised McAlister that she was not welcome in his home and that she needed to leave. McAlister then followed Strohmeyer to his front door and remained outside while Strohmeyer put their child to bed. After putting the child in his room, Strohmeyer returned to the front door to make sure it was closed. When he saw McAlister still standing there, he tried to shut the door, but McAlister used her foot to prevent the door from shutting. Strohmeyer continued advising McAlister that she was not welcome at his home and that she needed to leave. Strohmeyer told McAlister that she was trespassing, and he picked up a phone, threatening to call the police. McAlister smacked the phone out of Strohmeyer's hand, causing the phone to stop working. While Strohmeyer was distracted with the phone, McAlister forced her way inside Strohmeyer's home, indicating that she wanted to say goodbye to their child. McAlister then went to their child's room, and Strohmeyer, "knowing that when [McAlister] gets into these

moods she tends to get violent," went to retrieve a handgun.

When McAlister emerged from their child's room, Strohmeyer was waiting outside the room, holding the handgun at his side "just in case." The two continued to argue as McAlister headed toward the door to leave. While McAlister was walking out, Strohmeyer attempted to close the door, but McAlister again forced her way inside and began striking Strohmeyer, landing three direct hits to his genitals, as well as other blows to his stomach, arm, and leg. At that point, Strohmeyer pointed the weapon at McAlister and told her to "get out of [his] house." Strohmeyer later testified that the only reason he did so was to stop McAlister's attack against him. McAlister acknowledged striking Strohmeyer and conceded that he did not point the weapon at her or use it in a threatening manner before her physical attack on him. McAlister then left the residence without further incident.

Nineteen days later, McAlister filed an Adult Abuse Petition for Order of Protection based upon Strohmeyer's act of pointing the handgun at her. McAlister did not seek an ex parte order of protection. On March 12, 2012, the court held a hearing to determine whether McAlister was entitled to a full order of protection against Strohmeyer. After hearing testimony from both McAlister and Strohmeyer, the court denied McAlister's petition. McAlister appeals.

### Standard of Review

■ We will "affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously

---

**2.** At the time of the hearing on the full order of protection, there was also a pending paternity action involving the same parties. Stroh-

meyer has not disputed that he is the child's biological father.

declares or applies the law." *Cuda v. Keller*, 236 S.W.3d 87, 89 (Mo.App. W.D.2007) (quoting *Suhr v. Okorn*, 83 S.W.3d 119, 120 (Mo.App. W.D.2002)). When reviewing the record below, we are cognizant of, and defer to, "the trial court's superior ability to evaluate the issues by the testimony and demeanor of the witnesses." *Id.*

## Analysis

McAlister's sole claim on appeal is that the trial court misapplied the law when it denied her petition for a full order of protection. The crux of her argument is that, because the undisputed evidence demonstrated that Strohmeyer pointed a gun at her—an act she claims constitutes an attempt to place her in fear of physical harm as described in section 455.010—the trial court was required to grant her petition for a full order of protection. We disagree.

"Any adult who has been subject to domestic violence by a present or former family or household member . . . may seek relief under sections 455.010 to 455.085 by filing a verified petition alleging such domestic violence . . . by the respondent." § 455.020.1. "Domestic violence" is defined as "abuse or stalking." § 455.010(5). "Abuse" is defined as "the occurrence of any of the following acts, attempts or threats against a person who may be protected pursuant to this chapter . . .": assault, battery, coercion, harassment, sexual assault, or unlawful imprisonment. § 455.010(1)(a)–(f).

■ "Assault" is defined as "purposely or knowingly placing or attempting to place another in fear of physical harm. . . ." § 455.010(1)(a). Here, McAlister argues that Strohmeyer's undisputed act of pointing a gun at her constituted the assault form of "abuse" under the Adult Abuse Act.[3] McAlister then relies on the following language of section 455.040.1 to argue that, in light of the undisputed evidence of Strohmeyer's "assault," the court was *required* to grant her a full order of protection: "At the hearing, if the petitioner has proved the allegation of abuse . . . by a preponderance of the evidence, the court *shall* issue a full order of protection. . . ." (emphasis added). Specifically,

---

**3.** McAlister alternatively argues that even if Strohmeyer's act of pointing the gun at her did not constitute an assault, or was somehow justified, his act of retrieving the weapon in the first place also constituted an assault. She reasons that "[u]nder *no* logical argument could such conduct *not* have been his *attempt* to thereby intimidate, frighten and threaten" McAlister. This argument, however, is inconsistent with McAlister's testimony at the hearing, where she conceded that Strohmeyer "never used [the weapon] in a threatening manner until after [she] came after hi[m] . . . wanting to do harm." Additionally, the entire crux of her argument supporting assault at trial was that Strohmeyer's act of "stick[ing] a gun in [her] face" constituted an assault under the statute in that he knowingly and purposely placed her in fear of physical harm. In response to Strohmeyer's motion for directed verdict, McAlister's counsel argued that, "The statute defines abuse as knowingly or purposely placing another in fear of physical injury. Somebody sticks a gun in your face. That is without need for explanation in fear of physical injury." McAlister never argued or put on any evidence at the hearing that, by retrieving the gun, Strohmeyer placed her in fear or attempted to place her in fear of physical harm. At best, McAlister's alternative argument that, by retrieving the gun, Strohmeyer was attempting to place her in fear of physical injury is not preserved, and at worst, it is waived. Even if we were to reach the claim, it is not supported by the evidence. The only evidence regarding Strohmeyer's retrieval of the gun was McAlister's testimony that she did not know why he had the gun and Strohmeyer's testimony that he retrieved it because "when [McAlister] gets into these moods she tends to get violent." The reasonable inference from this evidence is that Strohmeyer retrieved the gun, not to threaten McAlister, but rather to defend himself.

she argues that her actions before the alleged act of abuse should have been irrelevant to the court's determination. We disagree.

Although not raised by the parties, there are two issues we must address in order to resolve McAlister's claim: (1) identifying the elements a petitioner is required to prove under section 455.040.1 to obtain a full order of protection, and (2) what, if any, discretion a trial court has once a petitioner satisfies that burden of proof.

The statutory scheme of the Adult Abuse Act allows a petitioner to seek protection in three different, albeit related, forms: (1) an ex parte order of protection; (2) a full order of protection; or (3) renewal of a full order of protection. The relevant statutory language is as follows: "Upon the filing of a verified petition [for an order of protection] and for good cause shown in the petition, the court *may* immediately issue an ex parte order of protection. An immediate and present danger of abuse of the petitioner shall constitute good cause. . . ." § 455.035 (emphasis added). "Not later than fifteen days after the filing of a petition . . . a hearing shall be held." § 455.040.1. "At the hearing, if the petitioner has proved the allegation of abuse . . . by a preponderance of the evidence, the court *shall* issue a full order of protection for . . . at least one hundred eighty days and not more than one year." *Id.* (emphasis added). "Upon motion by the petitioner, and after a hearing by the court, the full order of protection *may* be renewed for . . . at least one hundred eighty days and not more than one year from the expiration date of the originally issued full order of protection." *Id.* (emphasis added). Further, "[t]he court *may,* upon finding that it is in the best interest of the parties, include a provision that any full order of protection for one year shall automatically renew" upon the expiration of the original full order of protection, unless a hearing is timely requested by the respondent. *Id.* (emphasis added). And, "[w]hen an automatic renewal is not authorized, upon motion by the petitioner, and after a hearing by the court, the second full order of protection *may* be renewed for an additional period of time . . . [of] at least one hundred eighty days and not more than one year." *Id.* (emphasis added).

The remedies afforded a petitioner under the Adult Abuse Act consist primarily of injunctions. *See* § 455.050.1. Injunctions are designed "to prohibit future damage." *Goerlitz v. City of Maryville,* 333 S.W.3d 450, 455 (Mo. banc 2011); *see also State ex rel. Williams v. Marsh,* 626 S.W.2d 223, 231 (Mo. banc 1982) (indicating that the purpose of the Adult Abuse Act is to provide "a mechanism whereby the state can intervene when abuse of one adult by another household member occurs or is threatened and thus prevent further violence"). Ordinarily, to be entitled to injunctive relief, one must demonstrate "that irreparable harm will result if the injunction is not granted." *City of Kansas City v. New York–Kansas Bldg. Assoc., L.P.,* 96 S.W.3d 846, 855 (Mo.App. W.D. 2002). Accordingly, section 455.035.1 requires a petitioner seeking an ex parte order of protection to demonstrate "[a]n immediate and present danger of abuse." Section 455.040.1 has been interpreted to mean that, as with an ex parte order, when seeking a *renewal* of a full order of protection, the petitioner is again required to prove "by a preponderance of the evidence that the expiration of the Full Order will place petitioner in an immediate and present danger of abuse." *Capps v. Capps,* 715 S.W.2d 547, 552 (Mo.App. E.D.1986); *accord Bandelier v. Bandelier,* 757 S.W.2d 281, 283 (Mo.App. W.D.1988). Thus, a petitioner is required to prove an immediate and present danger both to obtain an ex parte order of protection and to renew a

full order of protection. In addition, the use of the word "may" to describe the court's authority to issue an ex parte order or to renew a full order connotes the legislature's intent to allow a trial court some discretion in issuing these orders.

There is no corresponding language, however, in the statute regarding the proof required for a full order of protection, and that statute does not expressly provide any discretion on the part of the trial court as to the grant or denial of a full order.[4] Rather, as noted above, in the case of an initial full order of protection, the statute indicates that once a petitioner proves an act of abuse, "the court *shall* issue a full order of protection." § 455.040.1 (emphasis added). We must address how the differing language affects the petitioner's burden and the trial court's discretion when the relief sought is a full order of protection.

■■■■ " 'The cardinal rule of statutory construction is that the intention of the legislature in enacting the statute must be determined and the statute as a whole should be looked to in construing any part of it.' " *Richards v. Treasurer of Missouri*, 179 S.W.3d 299, 304 (Mo.App. W.D.2005) (quoting *J.S. v. Beaird*, 28 S.W.3d 875, 876 (Mo. banc 2000)). "Words are to be given their plain and ordinary meaning wherever possible." *Beaird*, 28 S.W.3d at 876. And in doing so, we must attempt to give "[e]ach word or phrase in a statute ... meaning if possible." *State v. Blocker*, 133 S.W.3d 502, 504 (Mo. banc 2004). "It is a settled canon of statutory construction that; where different language is used in the same connection in different parts of an act, it is presumed that the legislative body intended different meaning and ef-

fect." *State ex rel. State Highway Comm'n v. Carlton*, 453 S.W.2d 642, 650–51 (Mo.App.1970). "Use of the word 'may' in a statute implies alternate possibilities and that the conferee of the power has discretion in the exercise of the power." *State ex rel. Nixon v. Boone*, 927 S.W.2d 892, 897 (Mo.App. W.D.1996). "Generally, the use of the word 'shall[,]' [however,] connotes a mandatory duty." *St. Louis Police Officers' Ass'n v. Bd. of Police Comm'rs of City of St. Louis*, 259 S.W.3d 526, 528 (Mo. banc 2008).

The Southern District recently analyzed the portion of the Adult Abuse Act addressing full orders of protection in *Martinelli v. Mitchell*, 386 S.W.3d 148 (Mo.App. S.D.2012). The appellant in *Martinelli* argued that the evidence below had been insufficient to support the trial court's award of a full order of protection against her, as the petitioner (her former girlfriend) had failed to prove the existence of an immediate and present danger of abuse at the time the full order of protection was sought. *Id.* at 149. The Southern District, in rejecting the appellant's claim, examined the language of section 455.040.1 and concluded that the only thing a petitioner must prove to be entitled to a full order of protection is either: (1) that the respondent "was a present or former adult family or household member and had subjected [p]etitioner to abuse," or (2) that the respondent had stalked the petitioner. *Id.* The Southern District noted that "[t]he only mention of 'immediate and present danger' in sections 455.010 to 455.085 occurs in section 455.035, in reference to the heightened standard required for the trial court's issuance of an ex parte order of protection, which is issued without the pro-

---

4. Although the statute indicates that the court "shall" grant a full order upon proof of the alleged act of abuse, the court retains discretion over the terms and remedies afforded under the full order. § 455.050.1 (providing that a full order of protection "*may* include such terms as the court reasonably deems necessary to ensure the petitioner's safety ..." (emphasis added)).

cedural safeguards afforded by a hearing." *Id.* at 150. The court indicated that it could find no cases "that categorically extend the 'immediate and present danger' requirement to obtain an ex parte order of protection under section 455.035 to the first initial issuance of a full order of protection as authorized by sections 455.020.1 and 455.040.1." *Id.* Thus, the court concluded, the "[p]etitioner was not required to prove an immediate and present danger to support the issuance of the full order of protection . . . ." *Id.*

▇▇▇▇ Assuming that Strohmeyer's act of pointing a gun at McAlister constituted an "assault" as defined in section 455.010(1)(a),[5] the holding in *Martinelli* would seem to support McAlister's argument that once an act of "abuse" has been demonstrated, the court must grant a full order of protection. But, as Judge Rahmeyer noted in her concurrence, this produces an odd result where a full order of protection is granted without any proof of possible future harm. *Id.* at 152 (Rahmeyer, J., concurring).

The Eastern District, apparently recognizing this same oddity in a prior case,

attempted to remedy it by importing "the discretion allowed the trial judge in issuing *ex parte* orders . . . to proceedings [that] relate to the granting of full orders of protection." *Parkhurst v. Parkhurst,* 793 S.W.2d 634, 636 (Mo.App. E.D.1990). The result being that the judge could determine the necessity of a full order of protection by evaluating "any reasonable apprehension of abuse that a petitioner may harbor[,]" and "whether a given respondent appears capable of the feared abuse." *Id.*[6]

▇▇▇▇ But, as discussed in *Martinelli,* the holding in *Parkhurst* that a petitioner must prove (or that a trial court must find) reasonable apprehension of harm is directly contrary to the plain language of section 455.040.1, mandating that the trial court grant a full order of protection upon proof of an act of abuse, without reference to evidence of any immediate and present danger of abuse. The plain language of section 455.040.1 indicates that the trial judge *shall* grant a full order of protection upon proof of an act of abuse; it does not require any proof of an immediate or present danger of abuse, nor does it vest the

---

5. Generally, "pointing a gun at a person constitutes the threat to use physical force." *State v. Merrick,* 257 S.W.3d 676, 683 (Mo. App. S.D.2008) (emphasis removed).

6. In *Martinelli,* relying on a prior holding of this court in *Cuda v. Keller,* 236 S.W.3d 87 (Mo.App. W.D.2007), the Southern District discounted *Parkhurst* as applicable only to ex parte orders. *Martinelli,* 386 S.W.3d at 150. We read both *Parkhurst* and *Cuda* differently. First, *Parkhurst* addressed the propriety of both an ex parte order and a full order of protection, *Parkhurst,* 793 S.W.2d at 636, and it discussed the need for the trial court to be allowed some discretion in deciding whether to grant a full order of protection. Thus, we disagree with the Southern District that the *Parkhurst* holding applied only to ex parte orders. Second, we do not believe that *Cuda* rejected *Parkhurst's* interpretation because, in *Cuda,* this court was addressing a different

issue. In *Cuda,* the issue was whether, when alleging assault as an act of abuse, the petitioner must prove that the respondent's act *actually* resulted in fear by the petitioner. *Cuda,* 236 S.W.3d at 90 (quoting the statutory definition of assault and concluding that "[t]here is no requirement of actually succeeding in placing another in fear of physical harm"). In reaching its holding, the court in *Cuda* found the *Parkhurst* opinion inapposite. *Id.* at 91. We believe the issue in *Cuda* is distinct from a requirement that a petitioner prove an immediate and present danger of future abuse from the respondent to obtain an initial full order of protection. One could be the victim of an "assault" under section 455.010(1)(a) without actually fearing the perpetrator (as held in *Cuda*), yet still be in immediate or present danger of future abuse, and thus entitled to an ex parte order of protection under section 455.035.1.

trial court with any discretion. That being said, however, because the remedies provided consist of injunctive relief, and because the purpose of the Act is, in part, to prevent *future* violence, we believe that proof of an act of abuse under section 455.040.1 carries with it a presumption of immediate and present danger that justifies both the remedy provided and the limit on the trial court's discretion. Thus, once a petitioner has established by a preponderance of the evidence that an act of abuse occurred, a presumption of immediate and present danger arises, justifying the need for injunctive relief.[7] The existence of this presumption, however, does not deprive the respondent of the right to prove that his or her acts were otherwise justified under the law. Thus, contrary to McAlister's argument, her actions are relevant in determining whether Strohmeyer's actions were legally justified.

Under the facts of this case, the trial court did not err in denying McAlister a full order of protection because Strohmeyer's act of pointing the weapon at McAlister was justified under the law. Section 563.031.2(2) allows an individual to use deadly force "against a person who unlawfully enters, remains after unlawfully entering, or attempts to unlawfully enter a dwelling, residence, or vehicle lawfully occupied by such [individual]...."[8]

Here, the undisputed evidence demonstrated that McAlister initiated a physical encounter by attacking Strohmeyer after forcing her way inside his home, disabling his phone, and ignoring his repeated admonitions that she was trespassing. "[A] person who uses force as described in section[ ] 563.031 ... is justified in using such force and such fact shall be an absolute defense to ... civil liability." § 563.074.1. Because Strohmeyer was justified in his action pursuant to section 563.074.1, he had an absolute defense to McAlister's petition for a full order of protection, and the trial court committed no error in denying the petition.[9]

McAlister argues that Strohmeyer's remedy for her actions was not to point a weapon at her, but to seek his own order of protection to prevent her from coming onto his property. She relies on *McGrath*

---

7. This presumption appears to be of limited duration in light of the fact that, when seeking a *renewal* of a full order of protection, the petitioner must again prove the existence of an immediate and present danger. *See Capps*, 715 S.W.2d at 552; *Bandelier*, 757 S.W.2d at 283. Because the presumption's duration appears to be limited, the trial court may have the discretion to deny a motion for a full protective order when there is a significant delay between the alleged act of abuse and the filing of the petition.

8. In some instances, pointing a deadly weapon at an individual has been determined to be not only the threat of force, but also the actual use of force. *See Merrick*, 257 S.W.3d at 683.

9. McAlister argues that interpreting section 563.074.1 to mean that the trial court's decision, denying McAlister a full order of protection based upon Strohmeyer's justified conduct, was correct would be inconsistent with section 563.016, which states: "The fact that conduct is justified under this chapter does not abolish or impair any remedy for such conduct which is available in any civil actions." Recognizing that the two statutes seem contradictory, McAlister argues that, to give both statutes meaning, section 563.074.1's reference to "civil liability" must mean damages only and thus, under section 563.016, equitable remedies remain available. She then argues that the relief afforded under the Adult Abuse Act is equitable in nature, and, consequently, section 563.016 controls and allows her to obtain an injunction even if Strohmeyer's conduct was otherwise justified under chapter 563.

McAlister's argument turns on her characterization of a full order of protection as an *equitable* remedy. Ordinarily, an injunction is a form of equitable relief, and, as such, the decision to grant it would be within the trial court's discretion and subject to equita-

*v. McGrath*, 939 S.W.2d 46 (Mo.App. W.D. 1997), to support her claim.

In *McGrath*, the appellant, against whom a full order of protection had been granted, appealed the order, arguing that the evidence was insufficient to support it. *Id.* at 46. The evidence demonstrated that the parties had recently been divorced, and following the dissolution, the respondent went to the appellant's home to retrieve tax information she had previously requested from the appellant. *Id.* at 47. When the appellant met her at the door, he picked her up by the shoulders of her coat and threw her across the front porch. *Id.* The respondent immediately filed for an ex parte order of protection, which was granted, and the court later held a hearing and subsequently granted a full order of protection. *Id.*

This court dismissed the appeal because it had been rendered moot when the full order expired before the conclusion of the appeal process. *Id.* In dicta, this court indicated,

> even if we were to review for sufficiency of the evidence, we find the evidence, viewed in the light most favorable to the trial court's order, is sufficient to support the trial court's entry of the full order of protection. The evidence was

that respondent was at appellant's residence without invitation to retrieve some tax information and that appellant threw respondent across the porch. *The fact that respondent was on appellant's porch uninvited neither excused his behavior nor provided a defense to a full order of protection. If appellant believed respondent should not be at his residence, he was free to seek his own order of protection.*

*Id.* (emphasis added).

McAlister relies on the italicized language to argue that her actions provoking Strohmeyer's response did not provide him with a defense to her petition for a full order of protection. We disagree.

First, as noted above, the language from *McGrath* was dicta, as the court dismissed the appeal on mootness grounds. Second, the opinion in *McGrath* predated section 563.074, and that section made McAlister's actions relevant to the determination of whether Strohmeyer was justified in his action. Once the evidence supported a justification defense under section 563.031, it constituted an "absolute defense" under section 563.074 to any civil liability on Strohmeyer's part, including the injunctive relief provided by section 455.050.1. And finally, even if *McGrath* were decided to-

---

ble defenses such as laches and unclean hands. But, as discussed above, the statute restricts the trial judge's discretion; thus, the injunctive relief provided does not possess the typical characteristics of equitable relief. Additionally, under the facts before us, if the remedy sought were truly equitable in nature, the equitable defense of unclean hands would bar McAlister from obtaining the injunctive relief provided by the Act. "A litigant with unclean hands generally is not entitled to equitable relief such as an injunction or declaratory judgment." *Purcell v. Cape Girardeau Cnty. Comm'n*, 322 S.W.3d 522, 524 (Mo. banc 2010). "This rule reflects that the law strives to prevent opportunistic behavior." *Id.* " 'A party who participates in inequitable activity regarding the very issue

for which it seeks relief will be barred by its own misconduct from receiving relief.' " *Id.* (quoting *City of St. Joseph v. Lake Contrary Sewer Dist.*, 251 S.W.3d 362, 369 (Mo.App. W.D.2008)).

McAlister's argument seeks to obtain the benefits of both the statutory mandate, restricting the court's discretion, and the historically equitable nature of injunctive relief, which is subject to broad discretion. She cannot have it both ways. If section 455.040 prevents the trial court from considering the moving party's conduct in deciding whether to grant a full order of protection, a full order of protection cannot be characterized as an equitable remedy; rather, it is a remedy at law. Thus, we reject McAlister's argument that section 563.016 controls.

day, the result would be the same, as the appellant there could not invoke the immunity provided by section 563.074 insofar as his actions did not meet the requirements for a justification defense as provided in chapter 563.

In sum, the plain language of section 455.040.1 requires a trial court to grant a full order of protection upon proof of an act of abuse. But where, as here, the respondent demonstrates that his or her actions were justified under the law, a trial court does not err in denying a full order of protection.

### Conclusion

The trial court's denial of the petition for a full order of protection is affirmed.

LISA WHITE HARDWICK, Presiding Judge, and JAMES M. SMART, JR., Judge, concur.