

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| N.J.D., | ) | No. ED106600 |
| | ) | |
| Petitioner/Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | |
| R.O.D., | ) | Honorable Lynne R. Perkins |
| | ) | |
| Respondent/Respondent. | ) | Filed: July 16, 2019 |

## Introduction

This is an appeal from the motion court's denial of N.J.D.'s (Appellant) petition seeking a protective order against R.O.D. (Respondent). We reverse the judgment of the motion court and remand with instructions to grant Appellant's petition and enter a full protective order on her behalf against Respondent.

## Factual and Procedural Background

Appellant and Respondent were coworkers. In April 2017, a sexual encounter occurred in Appellant's home between her and Respondent that Appellant characterized as a sexual assault. At the hearing on Appellant's petition seeking a protective order against Respondent, Appellant declined to provide details of the occurrence other than stating it was a "sexual assault," and she was "intoxicated" and "coerced."

Thereafter, Respondent began harassing Appellant both at and outside of their work, making unwanted sexual advances, and repeatedly asking Appellant to be his "side chick." Respondent asked several times to see Appellant outside of work, but Appellant refused.

In November 2017, Respondent invited Appellant to what she believed was a meeting of coworkers at a bar. When she arrived, she discovered she and Respondent were the only ones there. Respondent engaged Appellant in conversation, pulling out his cell phone to show Appellant pictures of himself posing with guns. Respondent claimed he was going on a hunting trip, but Appellant did not recognize the guns as being types used for hunting. At the hearing on Appellant's petition, Appellant testified that she felt Respondent intended to threaten her by isolating her and showing her pictures of himself with guns, and so she had reported the incident to her supervisor at work.

In December 2017, Appellant and Respondent attended a goodbye party for two of their coworkers. This party took place at a restaurant. Appellant testified she did not know Respondent would be attending, and if she had known she would not have gone.

As Appellant sat at a table, Respondent approached and sat opposite her. He asked why she was being cold towards him. Appellant replied she and Respondent were not friends, and she wanted nothing to do with him. Respondent replied loudly, within earshot of other coworkers, "You've been pissed off ever since you sucked my dick." Appellant asked what he meant, and Respondent shouted, "You've been exposed. Exposed. Exposed. Exposed." With this, Appellant picked up a beer from the table and dumped it on Respondent's head. A coworker intervened and escorted Respondent out of the restaurant.

After Respondent left the restaurant, Appellant asked for her bill. As she was paying, Respondent came back into the restaurant, having removed his beer-soaked shirt. Respondent

2

rushed towards Appellant, grabbed her by the neck, and began strangling her. He did not release his grip on Appellant's neck until coworkers pulled him off and escorted him back out of the restaurant. Appellant testified she was terrified as Respondent strangled her. The next day Appellant sought medical attention for her throat, as it still hurt and made a clicking sound when she swallowed. A doctor diagnosed Appellant with a possible fractured larynx. There were also marks on her neck made by Respondent's hands.

On January 3, 2018, Appellant filed for an order of protection, alleging Respondent had caused or attempted to cause her physical harm, coerced her, stalked her, harassed her, and sexually assaulted her. At the hearing, Appellant testified as to what had occurred between her and Respondent. Respondent was present but offered no evidence on his own behalf. When asked by the motion court if Respondent intended to testify, counsel for Respondent replied he intended to invoke his Fifth Amendment rights. Respondent cross-examined Appellant, mainly about the incident in the restaurant during which Respondent choked Appellant. Through cross-examination, Respondent attempted to show Appellant had provoked Respondent into strangling her.

After the hearing, the motion court denied Appellant's petition for a full order of protection. The motion court found there was insufficient evidence presented by Appellant to justify such an order. The motion court did not make findings of fact or conclusions of law. This appeal follows.

## Point Relied On

Appellant makes one point on appeal. She claims the judgment of the motion court was against the weight of the evidence, in that she proved by a preponderance of the evidence her

3

allegations of stalking and sexual assault such that the motion court was obligated to grant her petition under Section 455.040.[1]

Standard of Review

"We review an order of protection the same as in any other court-tried case." K.M.C. v. M.W.M., 518 S.W.3d 273, 276 (Mo. App. E.D. 2017), citing M.N.M. v. S.R.B., 499 S.W.3d 383, 384 (Mo. App. E.D. 2016). We will uphold the judgment of the motion court unless it is not supported by substantial evidence, against the weight of the evidence, or erroneously declares or applies the law. Id. Where the motion court does not make specific findings of fact, all facts are presumed to have been found in accordance with the result reached. Foraker v. Foraker, 133 S.W.3d 84, 104 (Mo. App. W.D. 2004). "This court sets aside a judgment on the grounds that it is against the weight of the evidence only when the court has a firm belief that the judgment is wrong." Gage v. Townsend, 846 S.W.2d 769 (Mo. App. S.D. 1993) (citation omitted).

We defer to the motion court's determinations of witness credibility, as it is in a superior vantage to assess such. Essex Contracting, Inc. v. Jefferson Cnty., 277 S.W.3d 647, 652 (Mo. banc 2009) (citation omitted). "When evidence is contested by disputing a fact in any manner, this Court defers to the trial court's determination of credibility." White v. Dir. of Revenue, 321 S.W.3d 298, 308 (Mo. banc 2010), citing Hinnah v. Dir. of Revenue, 77 S.W.3d 616, 620 (Mo. banc 2002). Contesting evidence does not necessarily mean presenting contradictory evidence; a party may contest a factual issue through cross-examination or argument to the court. Id. (citations omitted). "It is only when evidence is *uncontested* that no deference is given to the trial court's findings." Id. (citation omitted) (emphasis in original).

---

[1] All statutory references are to RSMo 2016 unless otherwise noted.

Discussion

Appellant claims the uncontested evidence presented at the hearing proved by a preponderance of the evidence that she was entitled to an order of protection. She argues she proved both that Respondent sexually assaulted her and that Respondent stalked her.

Section 455.020 provides that any person who has been the victim of sexual assault or stalking may file a petition seeking an order of protection against the perpetrator. Section 455.040 provides that when a full order of protection is sought, a hearing will be held. At the hearing, if the petitioner proves by a preponderance of the evidence she was the victim of sexual assault or stalking by the respondent, and the respondent cannot show that his actions were otherwise justified under the law, the motion court *shall* grant the petition.[2] "Preponderance of the evidence is defined as that degree of evidence that is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows the fact to be proved to be more probable than not." S.A. v. Miller, 248 S.W.3d 96, 99 (Mo. App. W.D. 2008) (citations omitted).

We start by considering whether Appellant proved Respondent sexually assaulted her. Section 455.010(1)(e) defines "sexual assault" as "causing or attempting to cause another to engage involuntarily in any sexual act by force, threat of force, duress, or without that person's consent." Appellant argues she presented sufficient uncontested testimony at the hearing to prove Respondent sexually assaulted her.

---

[2] The statute also provides relief for victims of domestic violence. However, Appellant and Respondent never cohabited and are not family, and thus Appellant may not seek relief under that provision. See Section 455.010(5); see also P.D.J. v. S.S., 535 S.W.3d 821, 824 (Mo. App. E.D. 2017).

5

At the hearing, Appellant testified Respondent sexually assaulted her in April 2017. The motion court pointed out that "sexual assault" is a legal conclusion, and asked Appellant what happened. Appellant responded:

> After the sexual assault there was seven months of sexual harassment in which he repeatedly asked me to be his side chick and to which I denied repeatedly. And the reason why I'm scared of him is because this April 7 incident occurred in my home. Therefore, he knows where I live.

After an objection by Respondent's counsel, Appellant's counsel stated she did not intend to go into further detail regarding the April 7 incident, except insofar as its occurrence was relevant to show Appellant's level of fear towards Respondent. Counsel for Appellant asked Appellant whether the sexual act that took place between her and Respondent was consensual, to which she responded, "No, I was intoxicated and coerced." No further details of the incident were provided.

While Appellant did testify she was sexually assaulted, and was "coerced" and "intoxicated" at the time, she declined to provide any details of the alleged incident. Appellant's allegation of sexual assault, without a specific factual explanation of what actually transpired, does not provide sufficient evidence for a trier of fact to find a sexual assault occurred. Hutchings v. Roling, 151 S.W.3d 85, 89 (Mo. App. E.D. 2004) ("Witnesses' conclusions, where devoid of any factual support, do not rise to the level of substantial and competent evidence."). Thus, the motion court did not err in finding she had presented insufficient evidence of sexual assault.

Next, we consider whether Appellant presented sufficient evidence of stalking.

Section 455.010 provides in pertinent part:

(14) **"Stalking"** is when any person purposely engages in an unwanted course of conduct that causes alarm to another person, or a person who resides together in the same household with the person seeking the order of protection when it is

6

reasonable in that person's situation to have been alarmed by the conduct. As used in this subdivision:

(a) **"Alarm"** means to cause fear of danger of physical harm; and

(b) **"Course of conduct"** means a pattern of conduct composed of two or more acts over a period of time, however short, that serves no legitimate purpose. Such conduct may include, but is not limited to, following the other person or unwanted communication or unwanted contact.

In support of her contention that she proved Respondent stalked her, Appellant points to her testimony concerning two instances she argues constituted a course of conduct that reasonably alarmed her, and was done without a legitimate purpose.[3] She points first to the incident at the restaurant in which Respondent strangled Appellant. She also points to the prior incident in which Respondent invited her to meet alone under false pretenses and showed her pictures of himself with guns, which he claimed were for hunting, but, as Appellant testified, were not the type "used to kill deer."

In order to establish Respondent's conduct constituted stalking, Appellant must prove that she was subjectively alarmed by it, and that it was objectively alarming. E.A.B. v. C.G.W., 415 S.W.3d 795, 799 (Mo. App. E.D. 2013). Additionally, she must prove such conduct served no legitimate, lawful purpose. Wallace v. Van Pelt, 969 S.W.2d 380, 385 (Mo. App. W.D. 1998). In reviewing the record, we find Appellant presented uncontested evidence that she was subjectively alarmed by Respondent's conduct. Additionally, the evidence Appellant presented was sufficient to prove Respondent's conduct was objectively alarming, and was without a legitimate purpose.

Under the statute, "alarm" means fear of physical danger. In order to be entitled to an order of protection, Appellant must prove not only that she feared physical danger as a result of

---

[3] "For conduct to have 'no legitimate purpose,' it must be found to be not sanctioned by law or custom, to be unlawful, or not allowed." Lawyer v. Fino, 459 S.W.3d 528, 533 (Mo. App. S.D. 2015) (citation omitted).

Respondent's conduct, but that it was objectively reasonable to do so. On this record, there is little doubt Appellant found Respondent's conduct subjectively alarming. At the hearing, Appellant characterized Respondent's conduct towards her as "eight months of intimidation and isolation and bullying and threats." However, we must also evaluate whether Appellant's alarm at Respondent's conduct was reasonable.

In evaluating whether Appellant's alarm was reasonable, an important factor to consider is Appellant's claim that Respondent sexually assaulted her. At the hearing, Appellant testified her fear of Respondent was rooted in his sexually assaulting her. As discussed above, Appellant's conclusory testimony about the sexual assault is, by itself, insufficient to entitle Appellant to a full order of protection under Section 455.040. However, Appellant's counsel argued to the court her testimony was necessary to provide context for understanding her level of fear at Respondent's subsequent actions. For this purpose, her testimony is both relevant and probative to show how, given the totality of the circumstances, Appellant's fear of Respondent was reasonable. A nonconsensual sexual encounter is a terrifying and traumatic experience. Appellant testified the sexual assault caused her to fear Respondent, because he knows where she lives and afterwards subjected her to numerous unwanted communications in the form of sexual advances at their workplace. Unwanted communication is one of the enumerated actions that may constitute a course of conduct under the statute. Section 455.010(14)(b). Given the unwanted sexual encounter that initiated Respondent's harassment, Appellant's alarm at Respondent's continual unwanted communications – including the incident in which Respondent lured her under false pretenses, isolated her, and showed her pictures of himself with guns – was objectively reasonable under the circumstances.

We must also consider the culmination of Respondent's alarming conduct: the incident in which Respondent viciously assaulted Appellant in front of coworkers at the restaurant. There is little controversy in claiming it is objectively alarming to be strangled by a coworker in a public place until other coworkers intervene to drag him away. The escalation of Respondent's unwanted conduct in this violent incident could only reinforce to Appellant the ominous and threatening undertones of being continually harassed at work, isolated and shown pictures of guns, as well as the alarm she felt about Respondent knowing where she lived. Respondent's violence also removes any doubt about whether his conduct was innocent, and the alarm it caused Appellant was reasonable.

Section 455.010(14) defines "stalking" as "an unwanted course of conduct that causes alarm to another person ... when it is reasonable in that person's situation to have been alarmed by the conduct." Thus, when evaluating whether Appellant's alarm was reasonable, we consider all of Respondent's actions together, because under Section 455.010 it is the course of conduct, not each individual act, that must reasonably alarm the petitioner. Given the plain language of the statute, we conclude it would be incorrect to consider only whether each incident between Appellant and Respondent was, in isolation, alarming. Analyzing Respondent's entire course of conduct to determine whether it was objectively alarming is in line with other prior cases that do likewise. See Miller, 248 S.W.3d at 100 (rejecting argument that merely staring at petitioner from afar could not reasonably alarm her because such conduct was repeated, inexplicable, and had escalated); see also K.M.C., 518 S.W.3d at 279 (series of unwanted public encounters sufficient to show stalking where contact was repeated and had escalated). Given that Respondent offered no innocent explanation for his actions, at the hearing or on appeal, we will not provide him with one via speculation. To do so would be to studiously ignore the broader

9

context of Appellant's experience of Respondent's harassment and assault.  Instead, per the statute, we consider Respondent's course of conduct in its entirety.  In doing so, we hold that Respondent's conduct was both subjectively and objectively alarming, and served no legitimate purpose.

At the hearing, Respondent presented no evidence on his behalf.  Additionally, Respondent did not file a responsive brief in this appeal.  In short, Respondent did not contest any of the evidence presented by Appellant that was sufficient to warrant a full order of protection.  Respondent cross-examined Appellant mainly about the incident at the restaurant when he choked her.  Respondent attempted to characterize his actions as being provoked by Appellant dumping beer on his head.  However, even viewed in the light most favorable to Respondent, this does not in any way justify Respondent rushing back into the restaurant after having been escorted out and strangling Appellant until her larynx was possibly fractured, such that his actions could be said to have had a "legitimate purpose."

"Because of the potential stigma that may attach to an individual who is labeled a 'stalker' under the Missouri Adult Abuse Act, trial courts must exercise great care to ensure sufficient evidence exists to support all elements of the statute before entering a full order of protection."  E.M.B. v. A.L., 462 S.W.3d 450, 452 (Mo. App. E.D. 2015).  However, where, as here, the record clearly demonstrates Respondent's history of violence and menace towards Appellant, conscientiousness towards the rights of the accused must be subservient to the main purpose of the act: the prevention of future incidents of violence.  McAlister v. Strohmeyer, 395 S.W.3d 546, 554 (Mo. App. W.D. 2013).  Once a petitioner establishes the statutory requirements by a preponderance of the evidence, "a presumption of immediate and present danger arises, justifying the need for injunctive relief."  Id.  If the petitioner establishes the

respondent stalked her, and the respondent is unable to rebut the presumption he poses a future danger, the trial court *shall* grant a full order of protection, per Section 455.040. At that point, the trial court is without discretion to do otherwise. Id. at 554 n. 9.

Appellant presented sufficient testimony to prove by a preponderance of the evidence that Respondent had stalked her. Respondent did not contest the relevant portions of her testimony, at the hearing or on appeal, or present any evidence or argument showing his actions were justified under the law. Accordingly, we hold the motion court erred by finding there was insufficient evidence to warrant granting Appellant a full order of protection against Respondent.

<u>Conclusion</u>

The judgment of the motion court is reversed. We remand this case with instructions for the motion court to grant Appellant's petition for a full order of protection against Respondent.

_____
SHERRI B. SULLIVAN, P.J.

James M. Dowd, J. and
Robin Ransom, J., concur.

11