## Conclusion

We affirm the judgment of the motion court.

Gary M. Gaertner, Jr., P.J., and Robert M. Clayton III, J. concur

**P.D.J., Respondent,**

v.

**S.S., Appellant.**

**No. ED 105257**

Missouri Court of Appeals,
Eastern District,
DIVISION TWO.

FILED: December 19, 2017

FOR APPELLANT: Steven A. Waterkotte, 7750 Clayton Rd., Suite 209, St. Louis, MO 63117.

For Respondent: PRO SE—P.D.J.

ROY L. RICHTER, Presiding Judge

S.S. ("Appellant") appeals from the trial court's judgment granting a Full Order of Protection pursuant to the Adult Abuse Act, Sections 455.010 to 455.085 (RSMo. Cum. Supp. 2013).[1] The court granted P.D.J. ("Respondent") a full order of protection against Appellant for one year with an automatic renewal for a period of one year, effective until January 11, 2019. The trial court awarded $13,045.58 in damages to Respondent for damages sustained to her two vehicles. We affirm the trial court's judgment in part, and reverse in part.

## I. Background

Respondent and Appellant are neighbors. In November 2016, Respondent filed an Adult Abuse (Harassment)/Stalking Petition for Order of Protection (the "Petition") under the Adult Abuse Act against Appellant. In January 2017, the trial court conducted a hearing on the Petition. At the hearing, Respondent explained that she filed the Petition because she felt that Appellant was a threat to her. When asked to describe the actions that Appellant committed which caused her concern for her safety, she responded that: (1) she received phone calls in which the caller refused to identify himself and told her to keep her dogs quiet; (2) she had received a threatening note telling her to keep her dogs quiet "OR ELSE"; and (3) her cars had been vandalized on her property in the middle of the night. As the hearing progressed, this evidence was adduced.

Respondent testified that when she received the anonymous phone calls, she asked the caller "Who is this," but never got a reply. Appellant admitted he made the anonymous phone calls to Respondent. He admitted that he called Respondent after "9:00, 10:00" in the evening, and admitted he never identified himself in the phone calls. When asked why he did not identify himself, he replied "I—I don't know. I—I—I just did not."

Appellant admitted to leaving a note on Respondent's car. When asked whether the note told Appellant to keep her dogs quiet "or else" in all capital letters, Respondent replied "that sounds fairly accurate." Appellant testified that by "OR ELSE," he meant that he would call the police or Humane Society. However, he admitted that he understood Respondent could have perceived the phrase "OR ELSE" as a threat.

Regarding the vandalism of Respondent's car, Respondent testified that on

---

1. Unless otherwise indicated, all statutory references are to RSMo. Cum. Supp. 2013 as updated through the most recent cumulative supplement.

September 30, around 1:00 in the morning, she heard someone outside her house. She heard what sounded like glass breaking and loud banging noises coming from outside. She called the police. While she waited for the police to arrive, she looked outside her bedroom window which faced her driveway. She saw Appellant "walking out of [her] driveway back to his house." She testified that the lighting outside was sufficient to identify Appellant because there is a streetlight directly across the street from her house and she could always see her driveway. When asked whether she was confident that it was Appellant walking from her driveway, she answered affirmatively and stated she was "Very confident." Appellant testified that she later discovered her cars' paint had been ruined by an unknown chemical and that at least one of her vehicles appeared to have been damaged by someone throwing rocks at it. The total damage to her vehicles was approximately $13,000.

Appellant denied any involvement in the vandalism of the vehicles and testified that he had not been outside at the time alleged by Respondent. Appellant testified that police officers from the Florissant Police Department came to his house on October 1, and he was cooperative. Appellant testified that after his encounter with the police officers, a detective contacted him and asked him to come in for questioning. Appellant refused to do so, and was never arrested.

Respondent testified that she feared Appellant due to his "escalating" actions. She testified she felt he was a threat to her. She did not know what he was going to do to her next, and she installed security cameras at her home, explaining that she "never had to live like that."

Following the close of evidence, the trial court found that Respondent proved "the allegations of stalking and/or of harassment against [Appellant], and [Appellant]

cannot show that his actions alleged to constitute such harassment were otherwise justified under the law." The court entered a full order of protection against Appellant, valid for one year, which will renew automatically for a second year. The court further entered a judgment for damages for $13,045.58 in favor of Respondent for the damage caused by Appellant to her vehicles. This appeal follows.

## A. Standard of Review

We review an order of protection the same as any bench-tried case, and the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. C.D.R. v. Wideman, 520 S.W.3d 839, 843 (Mo. App. W.D. 2017). All facts and reasonable inferences are viewed in the light most favorable to the judgment. Schwalm v. Schwalm, 217 S.W.3d 335, 336 (Mo. App. E.D. 2007). "We defer to the trial court's credibility determinations, recognizing that the court is free to believe all, part, or none of the testimony presented. Hance v. Altom, 326 S.W.3d 133, 135 (Mo. App. S.D. 2010).

## B. Sufficiency of Evidence (Point I)

In his first point on appeal, Appellant argues the trial court erred in entering a full order of protection against him because there was insufficient evidence to support its judgment. Specifically, Appellant argues that Respondent failed to prove both that Appellant engaged in an unwanted course of conduct that served no legitimate purpose and that Appellant's conduct caused Respondent alarm. Respondent declined to file a brief.

The Missouri Adult Abuse Act provides that "[a]ny person who has been subject to domestic violence by a present or former family or household member, or who has

been the victim of stalking, may seek relief under sections 455.010 to 455.085 by filing a verified petition alleging such domestic violence or stalking. . . ."

In its oral findings, the trial court stated that Respondent proved her "allegations of stalking **and/or of harassment** against [Appellant], and [Appellant] cannot show that his actions alleged to constitute **such harassment** were otherwise justified under the law." (Emphasis added). It is therefore not entirely clear whether the court entered its order of protection on a ground of stalking, abuse by harassment, or a combination of the two.[2]

Under the current statutory framework, abuse by harassment is separate from stalking.[3] Compare Section 455.010 (1)(d) with Section 455.010 (14). An order of protection based on abuse by harassment is available only to victims of domestic violence.[4] Respondent was not the victim of domestic violence because she and Appellant were not household members.[5] Therefore Respondent could only have received an order of protection based upon an allegation of stalking. See Towell v. Steger, 154 S.W.3d 471, 473 (Mo. App. S.D. 2005) (explaining that because the respondent and appellant in an order of protection case were never family or household members, the action must have been brought under the stalking provision of the Adult Abuse Act).

Since the trial court could not have entered the order of protection based on the grounds of abuse by harassment, it was error to the extent that it did so. We will further review the judgment to determine whether there was sufficient evidence to support the judgment based on the ground of stalking.

In its current form, "stalking" is defined in the Adult Abuse Act as "when any person purposely engages in an unwanted course of conduct that causes alarm to another person . . . when it is reasonable in that person's situation to have been alarmed by the conduct." Section 455.010(14). "Alarm" is defined as "to cause fear of danger of physical harm" and "course of conduct" is defined as "a pattern of conduct composed of two or more acts over a period of time, however short, that serves no legitimate purpose." Section 455.010(14)(a) and (b). Section 455.010(14)(b) provides a non-exhaustive list of examples of actions constituting an unwanted course of conduct: (1) following the other person, (2) unwanted communication, or (3) unwanted contact.

i. Course of Conduct

First, we will examine whether Appellant engaged in "a pattern of conduct composed of two or more acts over a period of time, however short, that serve[d] no legitimate purpose." Section 455.010(14)(b).

---

**2.** We note that the use of "check the box" forms should be used with caution to differentiate between an order for stalking and an order for harassment.

**3.** Prior to 2004, "harassment" used to be a component of the definition of "stalking," but all versions of Section 455.010 since 2004 have removed "harassment" from the definition of "stalking."

**4.** Section 455.010(5) defines "domestic violence" as "abuse or stalking committed by a family or household member, as such terms are defined in this section."

**5.** "Family" or "household member" is defined in Section 455.010(7) as "spouses, former spouses, any person related by blood or marriage, persons who are presently residing together or have resided together in the past, any person who is or has been in a continuing social relationship of a romantic or intimate nature with the victim, and anyone who has a child in common regardless of whether they have been married or have resided together at any time."

The trial court did not explicitly state which two of Appellant's acts constituted a "course of conduct" as defined in Section 455.010(14)(b). However, we have discerned from the record two such acts committed by Appellant that, together, constitute a "course of conduct."

The first act occurred when Appellant left a threatening note on Appellant's car which told her to keep her dogs quiet "OR ELSE." Appellant claimed he left the threatening note for the legitimate purpose of informing Respondent that he would notify the Humane Society if she did not keep her dogs quiet. However, the note did not explain that he would call the Humane Society or take any other legitimate action. Instead, it ended with the threat, "OR ELSE." Appellant admitted that he understood why Respondent perceived the phrase, "OR ELSE," as threatening. The trial court was free to disbelieve Respondent's explanation for leaving the note. See Hance, 326 S.W.3d at 135. Therefore, there was sufficient evidence that Appellant's note, written in such a manner, could reasonably be found to be a threat with no legitimate purpose.

The next act occurred when Appellant vandalized Respondent's vehicles in the middle of the night. Respondent testified that she was "very confident" she observed Appellant in her driveway almost immediately after her cars were vandalized. Appellant did not explain why he was present on Respondent's property, and instead denied being outside his home at the time. From the trial court's judgment, it must necessarily have found that Respondent was lying. The trial court is in the best position to judge a witness's credibility. Perren v. Perren, 475 S.W.3d 741 (Mo.

App. S.D. 2015). Appellant's presence in Respondent's driveway shortly after the cars were vandalized, coupled with the fact that he lied about being on Respondent's property, provide sufficient evidence to support the trial court's determination that Appellant vandalized Respondent's vehicles.[6] Following Appellant's threat of "OR ELSE," such vandalism communicated the extremes Appellant was willing to pursue in order to coerce Respondent to keep her dogs quiet and also displayed his displeasure when she failed to do so. Clearly this vandalism could serve no legitimate purpose.

Accordingly, there was sufficient evidence that Appellant engaged in two acts[7] of unwanted conduct against Respondent which served no legitimate purpose, and therefore engaged in a "course of conduct" under Section 455.010(14)(b).

ii. Alarm

Next, we must determine whether Appellant's course of conduct alarmed Respondent and, if so, whether it would be reasonable for a person in Respondent's situation to also have been alarmed by Appellant's conduct. Under Section 455.010(14)(a), to cause someone alarm is "to cause fear of danger of physical harm."

It is clear from Respondent's testimony that Appellant's conduct "alarmed" her subjectively. Respondent testified she feared Appellant's threatening and escalating behavior and specifically testified she did not want Appellant to come near her because she was concerned about what he would do next.

But, we must determine whether there was sufficient evidence to support a

---

6. We also note that on appeal Appellant does not contest the sufficiency of the evidence supporting the trial court's finding that he caused over $13,000 in damages to Respondent's vehicles.

7. Because it is not necessary for us to determine, we decline to address whether Appellant's late evening phone calls were acts of unwanted conduct which served no legitimate purpose.

finding that a reasonable person in Respondent's situation would also have been alarmed. Viewed in the light most favorable to the judgment, Appellant's threatening and escalating behavior towards Respondent began when he called her multiple times in the late evening and refused to identify himself. Next, he left a note on Respondent's car, telling her to do what he wanted "OR ELSE." Finally, when that did not achieve the desired result, he trespassed on Respondent's property in the middle of the night and vandalized her cars, causing over $13,000 in damage.[8] Appellant made so much noise while he was vandalizing Respondent's cars that Respondent called the police because she was afraid someone was breaking into her house. Although Appellant never physically harmed Respondent, "the purpose of the Adult Abuse Act [is] to prevent *potential* violence." Vinson v. Adams, 192 S.W.3d 492, 495 (Mo. App. E.D. 2006) (emphasis added). Given the escalation in Appellant's behavior towards Respondent, it was reasonable for her to fear that she was in danger of physical harm, and it would be reasonable for a person in Respondent's situation to be alarmed. Therefore, there was sufficient evidence that Appellant engaged in an unwanted course of conduct that caused alarm to Respondent.

■ We recognize that the two individuals here were neighbors and the Adult Abuse Act was not intended to be a solution for minor arguments between adults. Leaverton v. Lasica, 101 S.W.3d 908, 912 (Mo. App. S.D. 2003). Prior courts have warned us that there is great potential for adults to abuse the stalking provision of the Adult Abuse Act. Binggeli v. Hammond, 300 S.W.3d 621, 624 (Mo. App. W.D.

2010). The harm that can result is both real and significant, not the least of which will be the stigma that attaches to a person having been found to be a stalker. Thus, it is important that the trial courts exercise care in making sure that sufficient credible evidence exists to support all elements of the statute before entering a protective order. Id. Here, our review of the record demonstrates that, given the unique facts of this case, sufficient credible evidence existed to support the trial court's order of protection on the grounds that Appellant stalked Respondent.

Point one is granted in part and denied in part. To the extent the trial court's judgment granted an order of protection on the grounds of harassment, the point is granted. The point is denied to the extent the order of protection was granted on the grounds of stalking.

## C. Award of Damages (Point II)

■ Appellant claims the trial court erred in awarding Respondent $13,045.58 for the damage to her vehicles. Appellant contends that the Adult Abuse Act does not provide trial courts the authority to award monetary damages for damages to a petitioner's personal property. We agree.

Section 455.050.1 outlines terms that may be included in a full order of protection:

1. Any full or ex parte order of protection granted pursuant to section 455.010 to 455.085 shall be to protect the petitioner from domestic violence, stalking, or sexual assault and may include such terms as the court reasonably deems necessary to ensure the petitioner's safety, including but not limited to:

---

**8.** If proven in a criminal case, Appellant's vandalizing of Respondents' cars could have constituted first-degree property damage, a class D felony punishable by up to four years

in the Department of Corrections. Section 569.100 RSMo. Cum. Supp. 2012; Section 558.011.1(4) RSMo. Cum. Supp. 2003.

(1) Temporarily enjoining the respondent from committing or threatening to commit domestic violence, molesting, stalking, sexual assault, or disturbing the peace of the petitioner;

(2) Temporarily enjoining the respondent from entering the premises of the dwelling unit of the petitioner when the dwelling unit is:

(a) Jointly owned, leased or rented or jointly occupied by both parties; or

(b) Owned, leased, rented or occupied by petitioner individually; or

(c) Jointly owned, leased, rented or occupied by petitioner and a person other than respondent; provided, however, no spouse shall be denied relief pursuant to this section by reason of the absence of a property interest in the dwelling unit; or

(d) Jointly occupied by the petitioner and a person other than respondent; provided that the respondent has no property interest in the dwelling unit; or

(3) Temporarily enjoining the respondent from communicating with the petitioner in any manner or through any medium.

Additionally, Section 455.050.3 provides the orders and awards that may be granted by the trial court after an order of protection has been issued. The section predominantly addresses relief for former household members in providing the trial court authority to award the payment of rent, housing, court costs, custody, maintenance, or child support. Section 455.050.3(1)-(12). There is no mention in Section 455.050.3 of awarding monetary damages for a petitioner's property damage.

While Section 455.050.1 provides a non-exhaustive list of terms that can be included in an order of protection, the section states that an order should only include "such terms as the court reasonably deems necessary to ensure the petitioner's safe-ty." We do not see how the trial court could have determined that ordering Appellant to pay over $13,000 in damages was necessary to ensure Respondent's safety. We have not found a single case where an award for damage to personal property was included in an order of protection. No provision of the Adult Abuse Act authorizes such an award, and there is no need for us look beyond the plain language of Section 455.050 because its relevant provisions are not ambiguous. See Jefferson ex rel. Jefferson v. Missouri Baptist Med. Ctr., 447 S.W.3d 701, 707 (Mo. App. E.D. 2014) ("We may look beyond the plain language of [the statute]—and resort to extrinsic aids ...—only if the statute is ambiguous."). Because there is no indication in the Adult Abuse Act or case law that a trial court may award monetary awards for damage sustained to personal property, the award for damages here was beyond both the scope and purpose of the Adult Abuse Act.

The appropriate course of action for Respondent would be to file a separate civil action for personal property damages sustained to her vehicles. Because the Adult Abuse Act does not provide a trial court the authority to award damages for personal property, the trial court erred in awarding Respondent $13,045.58 in damages. Thus, we reverse the trial court's judgment awarding damages. Appellant's second point is granted.

## II. Conclusion

We affirm the trial court's judgment in part, and reverse in part. This case is remanded to the trial court with instructions to clarify its judgment granting the order of protection on the grounds of stalking exclusively. Further, the trial court is ordered to vacate its judgment awarding monetary damages for Respondent's property damage.

Robert G. Dowd, Jr., concurs.

Philip M. Hess, J., concurs.