

# In the Missouri Court of Appeals Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| B.J.T., | ) | ED106117 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| v. | ) | 1711-PN00396 |
| | ) | |
| D.E.C., | ) | Honorable Matthew E. P. Thornhill |
| | ) | |
| Respondent. | ) | Filed: January 22, 2019 |

### Introduction

B.J.T. (Petitioner) appeals from the judgment denying her a full order of protection against D.E.C. (Respondent). Because the trial court abused its discretion by not allowing a witness to testify at the hearing for a full order of protection, the judgment is reversed and the cause remanded for a new hearing.

### Background

Petitioner filed for an order of protection pursuant to the Adult Abuse Act (Act), Sections 455.005-455.090.[1] Petitioner alleged that Respondent committed the following acts: coercion, stalking, harassment, false imprisonment, and "placed or attempted to place [Petitioner] in apprehension of immediate physical harm."

---

[1] All statutory references are to RSMo. (2016) unless otherwise indicated.

The trial court issued an ex parte order of protection and thereafter conducted a hearing for a full order of protection. The trial court called the case and identified Petitioner, Respondent, and their lawyers. The court then stated "Here's how it is going to go. I've got to turn this over to [Petitioner's counsel] . . . Here's what I - - gave you -- I've told you about the ten-minute rule-okay."

Petitioner then testified as follows. Petitioner, eighty-years old, and Respondent, in his late thirties, have known each other since Respondent was three years old and they had a close relationship. Petitioner has no children. In late 2016, Petitioner gave Respondent her power of attorney. Petitioner's husband died in November of 2016. Respondent then moved into Petitioner's home. At that time, Respondents "attitude changed towards [Petitioner]." Respondent took the phone away from Petitioner, Respondent would place a pill under Petitioner's tongue that made her sleepy, Respondent threatened to "euthanize" Petitioner, and Respondent made other improper remarks. Petitioner was afraid of Respondent because she had seen him with a pistol under his belt and carrying switchblades.

On February 20, 2017, Petitioner told Respondent that she was revoking his power of attorney. Two social workers and Petitioner's friend were present when she informed Respondent. When Petitioner told Respondent about revoking the power of attorney, "He went ballistic. He started to scream, to cuss, to kick, to throw, to call everybody he knew on the phone. He was pacing back and forth. At one point he went outside and the two women called the police because they were afraid of him." Respondent told Petitioner, "You are f...ing me over. Why are you doing this to me?" Respondent "poked his finger in [Petitioner's] face and said, 'F. . . you.'" Petitioner was "petrified." After February 20,

2

Respondent moved out of Petitioner's house. Respondent subsequently came to Petitioner's house several times between 9:15 p.m. and 9:30 p.m. and stated that he wanted to look for something in the garage, but Petitioner "would not allow that."

During Petitioner's direct testimony, the trial court stated "Okay. I've got – you're about the ten-minute mark here." Petitioner's counsel acknowledged the ten-minute time limit and did not ask any more questions.

Respondent then testified as follows. Petitioner gave Respondent power of attorney for financial and healthcare matters. Petitioner had significant financial problems and Respondent helped with this issue. Respondent also sought assistance from social service agencies. Respondent has a license to carry a concealed firearm and does so wherever it is legal. Respondent did not threaten to euthanize Petitioner or in any other way harm Petitioner.

The court then stated "I'm going to start out by saying I think an order of protection is sort of a radical solution in terms of people's relationships." The court asserted that it was the power of attorney that put Respondent in Petitioner's house and got him involved in Petitioner's business that ultimately made Petitioner uncomfortable. But the court stated there was not a reason to issue an order of protection.

Petitioner's counsel then informed the court there was an additional witness and made an offer of proof. Counsel stated that the witness was a social worker who observed the February 20th incident. According to counsel, the witness would testify that Respondent was verbally abusive for three hours, threw papers at Petitioner, and was holding Petitioner's debit card, house key, and car key. The court responded that "[Petitioner] already characterized it that way and, as far as I'm concerned, it probably

3

happened exactly the way she told me. Okay." Counsel then added that the social worker would testify that Petitioner appeared to be afraid. The trial court found that because Respondent no longer had Petitioner's power of attorney, Respondent would no longer "persist" to be a danger to Petitioner. The court stated "[Respondent] doesn't have to be around [Petitioner], and I'm telling [Respondent] to leave [Petitioner] alone, okay. I agree. All that stuff probably happened." The court did not permit the social worker to testify.

The trial court dismissed Petitioner's petition and the ex parte order. This appeal follows.[2]

## Standard of Review

This Court's review in a case for an order of protection is the same as in any other court-tried case. P.D.J. v. S.S., 535 S.W.3d 821, 823 (Mo. App. E.D. 2017). We will affirm the trial court's judgment if it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. Id. The facts and reasonable inferences are viewed in the light most favorable to the judgment. Id. We defer to the trial court's credibility determinations, and we recognize that the court is free to believe all, part, or none of the witnesses' testimony. Id.

## Discussion

Petitioner raises three points on appeal. In her first two related points, Petitioner argues the trial court erred in dismissing her petition because (1) the language in Section 455.040.1 of the Act does not require an assessment of future dangerousness[3] and (2) once

---

[2] Petitioner has filed a motion to strike Respondent's pro se brief. The brief consists in part of exhibits that were not admitted at trial, are not part of the record on appeal, or should have been set forth in an appendix. Rule 84.04(h); Washington v. Zinn, 286 S.W.3d 828, 831 (Mo. App. E.D. 2009). We grant the motion in part and order that the exhibits that are part of Respondent's brief shall be stricken. We decline to strike the remaining portion of Respondent's brief, despite its failure to comply with certain provisions of Rule 84.04.
[3] In considering the issue of future dangerousness, this Court, the Western District, and the Southern District have used different analyses. Nenninger v. Smith, 400 S.W.3d 400, 406-08 (Mo. App. W.D. 2013);

4

Petitioner satisfied the requirements of Section 455.040.1, the trial court had no discretion to deny a full order of protection under the statute's language. In her third point, Petitioner argues the trial court erred by not permitting the social worker to testify about what occurred during the February 20th incident.

Section 455.020.1 of the Act states:

> Any person who has been subject to domestic violence by a present or former family or household member, or who has been the victim of stalking or sexual assault, may seek relief under sections 455.010 to 455.085 by filing a verified petition alleging such domestic violence, stalking, or sexual assault by the respondent.

A family or household member includes persons, such as Petitioner and Respondent, who have resided together in the past. Section 455.010(7). Accordingly, Petitioner filed a verified petition alleging she had been subject to domestic violence. Section 455.010(5) states that domestic violence is "abuse or stalking committed by a family or household member, as such terms are defined in this section." Section 455.010(1)(a)-(f) provides that "Abuse" includes but is not limited to the occurrence of any of the following acts, attempts or threats against a person: assault, battery, coercion, harassment, sexual assault and unlawful imprisonment.

We first address Petitioner's third point. Petitioner argues that the trial court erred by not permitting the social worker to testify regarding the February 20th incident. Petitioner asserts that the social worker would have provided testimony of Respondent's abuse and Petitioner's fear of Respondent.

We review the trial court's exclusion of evidence for an abuse of discretion. Shallow v. Follwell, 554 S.W.3d 878, 881 (Mo. banc 2018). Respondent did not object

Martinelli v. Mitchell, 386 S.W.3d 148, 150-52 (Mo. App. S.D. 2012); Parkhurst v. Parkhurst, 793 S.W.2d 634, 635-37 (Mo. App. E.D. 1990).

5

but the trial court on its own apparently considered the social worker's testimony cumulative. Evidence is only considered "cumulative when it relates to a matter so fully and properly proved by other testimony as to take it out of the area of serious dispute." Id. at 883 (citation and internal quotation marks omitted).

The social worker's testimony was not cumulative. The social worker was an eye-witness to the February 20th incident. According to the offer of proof, the social worker would have testified that, among other things, Respondent threw papers at Petitioner and held Petitioner's debit card, house key, and car key. Petitioner did not testify that these things occurred. Thus, the social worker would have testified to Respondent's acts of abuse not testified to by Petitioner. Further, the social worker would have also testified that Petitioner appeared to be afraid while Respondent testified that he did not harm Petitioner.

The trial court's finding that Petitioner's testimony "probably happened exactly the way [Petitioner] told me," does not render the social worker's testimony impermissibly cumulative. The trial court abused its discretion by not allowing the social worker's testimony. Petitioner's third point is granted.[4]

---

[4] The trial court based its decision on its finding that Respondent was not a future danger to Petitioner, but we decline to consider Petitioner's first two points until the trial court conducts a new hearing with the presentation of all evidence and enters a new judgment.

## Conclusion

The judgment is reversed and the cause is remanded to the trial court to conduct a hearing in accordance with this opinion.[5]

_____
Gary M. Gaertner, Jr., Judge

Kurt S. Odenwald, P. J., concurs.
Colleen Dolan, J., concurs.

---

[5] Although not raised at trial or on appeal by Petitioner, we address the trial court's "ten-minute rule" that apparently limits witness testimony to ten minutes. Section 455.040.1 requires a hearing within fifteen days after the filing of a petition for an order of protection that satisfies the requirements of Section 455.020 "unless the court deems, for good cause shown, that a continuance should be granted." In cases involving full orders of protection, the trial court shall conduct a proper adversarial hearing. See Grist v. Grist, 946 S.W.2d 780, 782 (Mo. App. E.D. 1997). We recognize the trial court's responsibility to timely dispose of all cases and to control its docket. Further, the court has considerable discretion in regulating the manner of witness examination. Brown v. Yettaw, 116 S.W.3d 733, 736 (Mo. App. S.D. 2003). But the trial court must also be cognizant of the significant ramifications of a truncated hearing for petitioners and respondents in cases involving full orders of protection. Moreover, many of these cases will be determined based upon the credibility of the petitioner and the respondent. Ten minutes is seldom, if ever, sufficient for a proper adversarial hearing and no trial court should set an arbitrary time limit of ten minutes for testimony in full order of protection cases. The present case is distinguishable from cases where the trial court limited presentation of evidence to a day or days. See Young v. Pitts, 335 S.W.3d 47, 50 (Mo. App. W.D. 2011) (on a motion to modify custody, the trial court did not abuse its discretion by setting a seven-and-one-half hour time limitation for mother to present her case at the final hearing); McAllister v. McAllister, 101 S.W.3d 287, 291-93 (Mo. App. E.D. 2003) (in dissolution proceeding, husband failed to show prejudice when the trial court ended the trial after one day); Brady v. Brady, 39 S.W.3d 557, 560-61 (Mo. App. E.D. 2001) (in dissolution proceeding, husband failed to show prejudice for four-day time limit for trial and parties agreed three months before trial it would take four days to present evidence on all essential issues.).

7